416 A.2d 986

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Kenneth Wayne SMITH, Appellant.**

Supreme Court of Pennsylvania.

Submitted May 19, 1980.

Decided July 3, 1980.

Laurence T. Himes, Jr., York, for appellant.

Floyd P. Jones, Asst. Dist. Atty., York, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION

EAGEN, Chief Justice.

In August 1975, Kenneth Wayne Smith, appellant, was convicted by a jury of murder of the first degree in connection with the homicide of Charles Jeffers. Post-verdict motions were denied, and Smith was sentenced to life imprisonment. On appeal, we affirmed the judgment of sentence. *Commonwealth v. Smith*, 477 Pa. 505, 384 A.2d 1202 (1978).

On September 18, 1978, Smith file a pro se petition under the Post Conviction Hearing Act [hereinafter: PCHA], Act of January 25, 1966, P.L. (1965) 1580, §§ 1 *et seq.*, 19 P.S.

§§ 1180–1 et seq. (Supp. 1979–80). Counsel was appointed, and after an evidentiary hearing, the petition was dismissed.[1] This appeal followed.

■ Smith claims he was denied effective assistance of trial counsel. Initially it is said counsel was ineffective for failing to "interview" Raymond "Chinee" Johnson and Derek Spells, both of whom had been tried and convicted prior to the Smith trial of participating with Smith in the murder of Jeffers. The record discloses that Smith's trial counsel had personal knowledge of statements given by Spells. They were inconsistent as to his involvement in the crime. Moreover, the statements implicated Smith in the killing. Trial counsel was also aware of statements given by Johnson to police following his arrest. These statements were inconsistent with what Johnson later said at trial under oath. With this knowledge, counsel concluded it would damage rather than help Smith's defense to call either Johnson or Spells as a trial witness. Under the circumstances, counsel's failure to "interview" these co-felons did not constitute ineffectiveness. Cf. *Commonwealth v. Gaston*, 474 Pa. 218, 378 A.2d 297 (1977).

Smith next contends trial counsel was ineffective for failing to call a deputy sheriff to testify as a defense witness. In order to properly evaluate this contention, a brief review of Smith's trial strategy is in order.

One of the principle issues at trial was whether Smith was an accomplice to the killing of Jeffers. The victim suffered multiple stab wounds to the chest and extremities and a gunshot wound to the chest. Smith, Spells, and Johnson inflicted the stab wounds while Johnson alone inflicted the gunshot wound. The physician who autopsied the body of the victim stated the cause of death was either a stab or gunshot wound to the chest. Smith admitted stabbing the victim; however, he testified at trial that he was coerced at gunpoint by Johnson. Smith attempted to portray Johnson

1. Smith also filed a pro se amended petition. The PCHA court permitted further amendments at the evidentiary hearing by Smith's appointed attorney.

as a professional killer and as some sort of devil worshipper who so intimidated Smith that he was coerced to stab the victim.

The record reveals Deputy Sheriff George Hansford testified at Spells' trial that Johnson threatened Smith about testifying against Johnson. The threat occurred more than a year after the killing while Johnson, Smith, and Spells were being transported to the York County Courthouse for arraignment. Although the exact language used by Johnson is not in the record, Johnson apparently stated: "Shut up, don't testify against me, or I'll get you [Smith]."

Smith argues this testimony should have been offered to show "that Johnson was capable of threats of this type. . . . " While it is none too clear, it is Smith's position trial counsel was ineffective in failing to call Hansford because this testimony would demonstrate Johnson's violent or coercive character and corroborate his defense of duress. To determine the merit of this contention, we must ascertain whether testimony of such a single threat is admissible to support the alleged violent character of Johnson in an effort to show that Johnson was capable of and did, in fact, coerce Smith to stab the victim.

There is a lack of authority in the Commonwealth on the manner of establishing the defense of duress;[2] however, the law on self-defense assists us in the disposition of this issue.

In *Commonwealth v. Amos*, 445 Pa. 297, 284 A.2d 748 (1971), we said testimony as to the victim's character is admissible for the following purposes: (1) to corroborate the defendant's alleged knowledge of the victim's violent character to corroborate the defendant's testimony that he had a reasonable belief his life was in danger and (2) to prove the allegedly violent propensities of the victim to show he was

---

2. The defense of duress is set forth at 18 Pa.C.S.A. § 309(a) (1973) as follows:

"(a) *General rule.*—It is a defense that the actor engaged in the conduct charged to constitute an offense because he was coerced to do so by the use of, or a threat to use, unlawful force against his person or the person of another, which a person of reasonable firmness in his situation would have been unable to resist."

the aggressor. We further noted that, generally, character can be proved only by reputation evidence. In *Commonwealth v. Darby*, 473 Pa. 109, 373 A.2d 1073 (1977), we held that convictions and violent acts of a victim which did not result in conviction, of which the defendant had knowledge, could be introduced for the first purpose mentioned in *Commonwealth v. Amos*, supra. We further held, however, that violent acts which did not result in conviction could not be offered for the second purpose announced in *Commonwealth v. Amos*, supra. See also *Commonwealth v. Stewart*, 483 Pa. 176 n. 4, 394 A.2d 968 n. 4 (1978).

■ Hansford's testimony would show at most that Johnson threatened Smith on one occasion more than a year after Smith stabbed Jeffers. Smith urges this testimony would serve the purpose of showing Johnson was capable of "threats" or coercion. This is analogous to the second purpose mentioned in *Commonwealth v. Amos*, supra, and under our decisions in *Commonwealth v. Amos*, supra, and *Commonwealth v. Darby*, supra, only evidence of violent acts which have resulted in convictions are admissible for this purpose. Johnson's threat did not result in conviction and it does not constitute reputation evidence of a violent character admissible to establish Johnson was capable of coercion at the time of the killing. Cf. *Commonwealth v. Romanic*, 311 Pa. 415, 166 A. 902 (1933) (single statement by victim that he killed a man is not relevant to establish violent character in effort to show victim was aggressor in encounter with defendant).

■ Trial counsel's assistance is constitutionally effective once we are able to conclude the particular course chosen by trial counsel had some reasonable basis designed to effectuate his client's interests. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). However, we will not examine the basis for trial counsel's course of action unless the claim not pursued was of argua-

ble merit. *Commonwealth v. Smith*, 478 Pa. 76, 385 A.2d 1320 (1978); *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977). Finally, trial counsel cannot be deemed ineffective for failing to pursue a course of action devoid of merit. See *Commonwealth v. Smith*, supra.

■ Instantly, an attempt to introduce Hansford's testimony would have been fruitless; accordingly, trial counsel cannot be deemed ineffective for failing to call Hansford as a witness.

Smith next contends trial counsel was ineffective for failing to object to remarks made by the district attorney during his summation. Smith contends the remarks were impermissible personal expressions of belief, on the part of the district attorney, about Smith's guilt and that such remarks were so prejudicial as to deny him a fair trial.

■ We have held it improper for a district attorney to express his or her *personal* opinion about a defendant's guilt either by direct statement or indirectly by figure of speech. *Commonwealth v. Cronin*, 464 Pa. 138, 346 A.2d 59 (1975). Accordingly, it is improper for the district attorney to directly assert a personal belief in a defendant's guilt, see *Commonwealth v. Cronin*, supra, to indirectly assert such a belief by stigmatizing the defendant through the use of epithets, see *Commonwealth v. Anderson*, 490 Pa. 225, 415 A.2d 887 (1980); *Commonwealth v. Capalla*, 322 Pa. 200, 185 A. 203 (1936), or to indirectly assert such a belief by stating the defendant is guilty unless the victim comes back to life, see *Commonwealth v. Cronin*, supra; *Commonwealth v. Lark*, 460 Pa. 399, 333 A.2d 786 (1975); *Commonwealth v. Lipscomb*, 455 Pa. 525, 317 A.2d 205 (1974).

■ We have also recognized, however, that a district attorney must have reasonable latitude in fairly presenting a case to the jury and that he or she *must* be free to present his or her arguments with "logical force and vigor." *Com-*

*monwealth v. Cronin,* supra, 464 Pa. at 143, 346 A.2d at 62. Furthermore, the district attorney may always argue to the jury that the evidence establishes the defendant's guilt. *Commonwealth v. Capalla,* supra; *Commonwealth v. Wilcox,* 316 Pa. 129, 173 A. 653 (1934). Finally, the prejudicial effect of the district attorney's remarks must be evaluated in the context in which they occurred. *Commonwealth v. Perkins,* 473 Pa. 116, 373 A.2d 1076 (1977) (plurality opinion); *Commonwealth v. Crittenton,* 326 Pa. 25, 191 A. 358 (1937).

Instantly, Smith's complaint is based on the following remarks:

"During your questioning as jurors, each of you promised if there was proof beyond a reasonable doubt of the Defendant's guilt, you would return a verdict of guilty. You also promised to act fairly and impartially. It is certainly consistent with those promises for you to find this Defendant guilty of Murder in the First Degree.

"Will justice be done? The decision is yours. Ladies and gentlemen, let justice be done, let your verdict be guilty of Murder in the First Degree."

Clearly, these remarks reveal no direct *personal* assertion of the district attorney's belief in Smith's guilt. Furthermore, the district attorney neither stigmatized Smith through the use of epithets nor indirectly asserted his belief in Smith's guilt by referring to the reincarnation of the victim. These remarks were made at the close of the district attorney's summation immediately after he recounted pertinent facts and argued pertinent principles of law. Fairly read, these remarks indicate that the decision about Smith's guilt or innocence was for the jury; that if evidence was produced to prove Smith guilty beyond a reasonable doubt, the verdict should be guilty; and that the evidence produced was consistent with such a degree of proof thereby warranting a verdict of guilty. We are not persuaded these comments were improper. As indicated above, a district attorney may properly argue the evidence proves a defendant's guilt.

*Commonwealth v. Capalla,* supra; *Commonwealth v. Wilcox,* supra. Since trial counsel cannot be deemed ineffective for failing to assert meritless claims, see *Commonwealth v. Smith,* supra, trial counsel was not ineffective for failing to object to the remarks now challenged.

Finally, Smith contends trial counsel was ineffective because he failed to object to certain rebuttal testimony elicited by the Commonwealth. During direct examination, Smith stated he stabbed the victim because he was coerced at gunpoint by Johnson. During cross-examination, Smith recounted some six statements made by him concerning the killing. In five of these statements, including a November 1974 tape-recorded statement given to state police investigators, Smith denied any participation in the murder; however, in the sixth statement, also tape-recorded by state police investigators on December 10, 1974, Smith admitted he stabbed the victim. Smith also testified during cross-examination that he told the state police investigators he was coerced, although this did not occur during any of the six statements referred to here.[3]

In rebuttal, the Commonwealth called one of the state police investigators who witnessed Smith's two tape-record-

---

**3.** The following transpired during the district attorney's cross-examination of Smith:

"Q. Now it is also true, is it not, that in the entire statement that you made to the police [the state police investigators], but before the tape was made and during the tape, that you never told them that you were forced to stab [the victim]?

A. What?

Q. Isn't that correct?

A. I told the police I wasn't forced?

Q. That's correct.

A. *I have told them I was, yes.*" [Emphasis supplied.]

Smith also testified during cross-examination that he did not state, in the December 1974 statement, that anybody coerced him. Finally, to further confuse the issue, Smith testified during cross-examination that the first time he ever stated he was coerced was during his direct examination at trial.

Trial testimony also reveals that Smith and the state police investigators conversed about other matters not disclosed in the record transcripts of the November 1974 and December 1974 tape-recorded statements.

ed statements. The officer testified that Smith never told him, at any time, that he had been coerced to stab the victim.

Smith contends that this rebuttal was improper because "at no time did [he] testify that he had told the officers that he was forced to stab [the victim]." The record clearly reveals evidence to the contrary; accordingly, the rebuttal testimony was not improper.

█ We have held that the admission or rejection of rebuttal evidence is within the sound discretion of the trial court, see *Commonwealth v. Farrior*, 446 Pa. 31, 284 A.2d 684 (1971), and that a party may produce evidence to rebut testimony which he or she has elicited from an opponent's witness on cross-examination, see *Commonwealth v. Hickman*, 453 Pa. 427, 309 A.2d 564 (1973). Instantly, although Smith's testimony concerning whether he told the state police investigators that he was coerced to stab the victim is contradictory, the trier of fact, in resolving the conflict in testimony, could reasonably have concluded that Smith affirmatively advised the investigators of Johnson's alleged coercion. Accordingly, the Commonwealth's rebuttal testimony, which in fact rebutted Smith's statements, was properly admitted. See *Commonwealth v. Hickman*, supra.

█ Since Smith's claim underlying this ineffectiveness argument is without merit and since trial counsel cannot be deemed ineffective for not raising meritless claims, see *Commonwealth v. Smith*, supra, trial counsel cannot be deemed ineffective for failing to object to the admission of the rebuttal testimony.[4]

Order affirmed.

4. Smith also claims trial counsel was ineffective for failing to object to this same testimony because it constituted an improper comment on Smith's right to remain silent. This specific claim was not raised in either the post-conviction petition or at the PCHA hearing; accordingly, it has not been preserved for review. *Commonwealth v. Triplett*, 476 Pa. 83, 381 A.2d 877 (1977).