34

449 A.2d 64

COMMONWEALTH of Pennsylvania

v.

**Widmark MITCHELL, Appellant.**

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Widmark MITCHELL.**

Superior Court of Pennsylvania.

Argued Sept. 10, 1981.

Decided May 28, 1982.

Reargument Denied Aug. 24, 1982.

Petition for Allowance of Appeal
Denied Nov. 15, 1982.

Burton A. Rose, Philadelphia, for Mitchell, appellant (at No. 566) and appellee (at No. 590).

Ellen Mattleman, Assistant District Attorney, Philadelphia, for Commonwealth, appellant (at No. 590) and appellee (at No. 566).

Before HESTER, McEWEN and SHERTZ, JJ.

HESTER, Judge:

The defendant-appellant was indicted for Murder, Robbery, Conspiracy and Weapons Offenses. The jury trial was delayed while the Supreme Court of Pennsylvania heard his pre-trial appeal on the issue of whether Rule 1100 of the Pa. Rules of Criminal Procedure was violated. The defendant-appellant lost on the pre-trial appeal and the case was remanded for trial on May 13, 1977.

The trial convened on May 25, 1977; however, a mistrial resulted. The defendant-appellant then appealed from an order denying his motion for a dismissal on double jeopardy grounds. This appeal was eventually rejected by the Supreme Court and a jury trial was finally commenced and completed.

On September 10, 1980, a jury found the defendant-appellant guilty of Murder of the Second Degree, Robbery and

Possession of an Instrument of Crime. Post-trial motions were filed.

Both the Commonwealth and defendant-appellant, Widmark Mitchell, have appealed Orders filed by the Court of Common Pleas of Philadelphia County in response to the defendant's post-trial motions. The Commonwealth has appealed the granting of the defendant-appellant's motion for a new trial; the defendant has appealed the denial of his petition in arrest of judgment.

On July 6, 1975, the defendant-appellant and his co-felon, Donald Griffin, entered a house at 3135 Arizona Street, Philadelphia. The defendant, while armed with a handgun, demanded cash from Shirley McClennan. Also present in the house during the armed robbery were James Field, Jeffrey Hayes, William Curtis, Mrs. McClennan's husband, L. C. McClennan and the victim, James Fulton. Blows were inflicted by the co-felons on Fields, Curtis and the victim; and, Fields and the victim were robbed as well. Without provocation, the defendant-appellant shoved the victim into a chair and fired a fatal shot into his chest. Before fleeing the scene, the co-felon forced Mrs. McClennan, Fields and Hayes to the basement.

In an effort to gain affirmance of the lower court's granting of a new trial, the defendant raises several arguments, a few of which warrant our response. All are without merit; therefore, we reverse the order granting the new trial. We defer to that portion of the lower court's opinion denying the motion in arrest of judgment. Consequently, we reverse in part and affirm in part.

Defendant-appellant argues first that a new trial is mandated by trial counsel's failure to locate, interview and subpoena a witness, William Curtis. Curtis was present at the time the robberies, assaults and killing occurred and actually witnessed most of the criminal acts. After the criminal incidents, yet on the same day, Curtis issued two separate statements to the Philadelphia Police. In one statement, he stated that he had been cracked on the knees by a shotgun wielded by a tall, light-skinned black man. He

further said that a small black man stood by the front door while the tall, light-skinned man fatally shot James Fulton in the chest, discarded the shot-gun onto the kitchen floor and shortly thereafter retrieved it. Both men, according to Curtis, then fled from the scene. The defendant-appellant fits the "small black man" description.

Later in that same day, Curtis issued his second statement to the police wherein he admitted to not actually seeing anyone fire at the victim. He did say, however, that the tall light-skinned man held a shot-gun while the short dark man carried no gun.

Defendant-appellant believes that both statements were exculpatory in regard to his case. He argues that the written statements were inadmissible as hearsay evidence; therefore, it was incumbent upon his trial counsel to secure Curtis' presence as a witness at trial.

It is axomatic that the actions of criminal counsel cannot be deemed ineffective as long as such actions had some reasonable basis to effectuate the accused's interest. *Commonwealth v. Dancer*, 460 Pa. 95, 103, 331 A.2d 435 (1975); *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). It is not significant or determinative that the course chosen by counsel was, upon hindsight, less effective than other available trial tactics. Nor is it determinative that counsel himself admitted at the PCHA hearing that he neglected to secure Curtis' presence because he relied on the Commonwealth's assurances that it would produce Curtis for trial. *Commonwealth v. Smith*, 490 Pa. 380, 416 A.2d 986 (1980). *Commonwealth v. Smith*, 442 Pa. 265, 275 A.2d 98 (1971); *Commonwealth v. Barren*, 273 Pa.Super. 492, 417 A.2d 1156 (1979).

Defendant-appellant failed to demonstrate how his counsel's choice to introduce Curtis' statement as evidence had no reasonable basis whatsoever in effectuating his interest. At the hearing on the PCHA petition, counsel testified that he believed the statement would qualify as either an excited utterance or res gestae exception to the hearsay

rule. It was not unreasonable for counsel to attempt to have the written statements admitted as hearsay exceptions in light of the fact that other witnesses and acquaintances knew nothing of Curtis' whereabouts.

■ Defendant-appellant argues further that his trial counsel was ineffective because he neglected to object to the trial judge's cross examination of defense witness and co-felon, Donald Griffin. The defendant-appellant believes that the interrogation by the court suggested to the jury the court's own disbelief of defense testimony; therefore, a new trial was appropriately ordered. *Commonwealth v. Seabrook*, 475 Pa. 38, 379 A.2d 564 (1977); *Commonwealth v. Watts*, 358 Pa. 92, 56 A.2d 81 (1948). The trial judge's interrogation may well have suggested his perception of Mr. Griffin's veracity and sincerity; however, any such suggestion was negated by judge's charge that the jury is the exclusive and final determining body of a witness's credibility. *Commonwealth v. Myma*, 278 Pa. 505, 123 A. 486 (1924). Furthermore, we are not troubled by the possibility that the court's interrogation strengthened the Commonwealth's case. The primary purpose of all criminal proceedings is to ascertain the truth and the court's obligation is to assist in pursuing that purpose. *Commonwealth v. Patskin*, 372 Pa. 402, 93 A.2d 704 (1953).

■ The defendant-appellant's next argument is that his trial counsel was ineffective for failing to object to the court's instruction with respect to causation. Specifically, the defendant-appellant argues that the court's use of the "but for" test directed the jury's attention to his actions only and not the acts of the victim or third party that may well have caused the death. In *Commonwealth v. Kingsley*, 480 Pa. 560, 391 A.2d 1027 (1978), the court instructed the jury on two occasions that the accused could be held guilty of either murder in the third degree or voluntary manslaughter only if they found that death would not have occurred but for the accused's actions. The *Kingsley* court acknowledged that such a charge was incorrect since the accused's actions need not be the only cause of death in

40

order to arrive at a guilty verdict. Nevertheless, the *Kingsley* court read the entire charge as a whole, found it to be reasonable and concluded that no prejudice resulted from the use of the "but for" test. We look to the charge as a whole as well and conclude that the jury here was properly instructed on all other matters of law. Moreover, the "but for" charge could actually help the defendant-appellant if the jurors concluded that he could be found guilty only if he alone committed criminal acts causing Fulton's death. The evidence revealed that Griffen committed criminal acts as well.

The final argument raised by the appellant-defendant that merits our response is that trial counsel was once again ineffective for failing to request a jury instruction on involuntary manslaughter. In *Commonwealth v. White*, 490 Pa. 179, 415 A.2d 399 (1980), the Court held that an involuntary manslaughter charge shall be given in a murder prosecution only when requested, where the offense was made an issue in the case and where the trial evidence would reasonably support such a verdict. Since the appellant in *White*, supra, was undeniably engaged in a robbery, the act constituted nothing less than murder in the second degree; therefore, an involuntary murder charge was inappropriate. The trial evidence here does not reasonably support a verdict of involuntary manslaughter; the defendant-appellant engaged in armed robbery as well. Upon review of the statutory definitions of murder of the first and second degree and involuntary manslaughter, we cannot foresee a conviction of anything less than murder of the second degree. 18 Pa.C.S.A. §§ 2502, 2503 and 2504.

Reversed in part, affirmed in part.

The Order of the court below granting appellant a new trial be and the same is hereby reversed and we remand for the imposition of the appropriate sentence.

The Order of the court below denying appellant's Motion in Arrest of Judgment is affirmed.

McEWEN, J., files a concurring opinion.

SHERTZ, J., did not participate in the consideration or decision of this case.

McEWEN, Judge, concurring:

I concur in the excellent opinion of my learned and distinguished colleague, Judge John P. Hester, and, of course, his conclusion that the order granting a new trial should be reversed. Since I differ, however, so strongly with the decision to grant a new trial, even though I commend the abundance of concern of the distinguished Philadelphia Common Pleas Court Judge Theodore B. Smith for the proper protection of the defendant, it seems preferable that I express my reasons for reversing the order that a new trial be granted.

Appellant, in the post-verdict motions filed by present counsel, claims that trial counsel was ineffective for failing to locate, interview and subpoena William Curtis and that, as a result, a new trial should be granted. The Common Pleas Court granted that request for a new trial even though post-verdict motions counsel:

(1) failed to show that William Curtis was available for presentation by trial counsel as a defense witness in the initial trial;

(2) failed to himself produce William Curtis at the post-verdict proceedings;

(3) failed to otherwise demonstrate that the testimony of William Curtis would have been helpful to the defense; [1]

(4) failed to demonstrate that William Curtis would be available for use as a defense witness at a subsequent trial.

1. Defense counsel further alleged that trial counsel was ineffective for failing to introduce at the trial of appellant the transcript of the testimony of William Curtis in the trial of appellant's co-defendant Donald Griffin. However, present counsel did not establish at the post conviction hearing whether William Curtis actually testified in the trial of the co-defendant of appellant, nor did he produce any transcript of the testimony taken in that trial to substantiate his claim.

Rather, as the brief of the district attorney notes "the only evidence presented at the post-verdict stage concerning Curtis' potential testimony was the statements he gave the police." (Brief of appellee at p. 13). A review of the two statements made by Curtis to the police on the day of the murder demonstrates that presentation of William Curtis as a witness would have been an exercise in futility.

The first written statement Curtis gave to the police, dated July 6, 1975, 8:55 a.m., indicates that the tall light skinned male (a description which matched that of the co-defendant appellant) shot the victim. Curtis further stated that the tall light skinned male threw the shotgun into the kitchen and then ran out the door with the other individual described as a "little black dude" who was said to be "standing in the door with a handgun." The second written statement taken by the police from William Curtis on the same date at 12:15 p. m. indicates that Curtis "did not see anybody fire a gun at Jimmy, but the tall light skinned (sic) had a shotgun and hit me across the knees with it." This second statement indicates that Curtis heard the shot but did not see who fired the shot as he said in the statement, "I think the guy with the shotgun shot Jimmy, but I am not sure." The second statement also indicates that Curtis did not see the shorter man holding a gun.

When an appellant contends he was denied effective assistance of counsel, the task of this court encompasses first a determination of whether the claim that inspires the contention of ineffectiveness has arguable merit and only then, if we determine the claim has such arguable merit, do we determine if the course of representation conducted by counsel had some reasonable basis designed to effectuate the interest of the client.

The failure of trial counsel to present a possible witness is not per se ineffective assistance of counsel. *Commonwealth v. Rhodes*, 272 Pa.Super. 546, 416 A.2d 1031 (1979); *Commonwealth v. Charleston*, 251 Pa.Super. 311, 380 A.2d 795 (1977). The failure of defense counsel to call a possible witness does not constitute ineffective assistance of counsel

absent some positive demonstration that the testimony would have been helpful to the defense. *Rhodes, supra: Charleston, supra. See Commonwealth v. Abney*, 465 Pa. 304, 350 A.2d 407 (1976); *Commonwealth v. Twiggs*, 460 Pa. 105, 331 A.2d 440 (1975); *Commonwealth v. Pittman*, 295 Pa.Super. 234, 441 A.2d 436 (1982); *Commonwealth v. Burrell*, 286 Pa.Super. 502, 429 A.2d 434 (1981).

When we explore the question of whether the testimony of the absent witness would have been of value and helpful to the defense, we must consider: (1) the testimony of the absent witness would not ultimately have been of value, whatever the nature of his testimony, in view of the conflict which existed between the two statements that he had made to police on the day of the murder and in view of the fact that in the second of those two statements he indicated that he did not see the actual shooting; (2) the testimony of the two eyewitnesses to the shooting that appellant was the individual who shot the victim; (3) the testimony of the co-defendant of appellant which implicated appellant; (4) the testimony of the medical examiner that the fatal shot was fired from a .32 caliber gun (the weapon in the possession of defendant) and not a shotgun (the weapon in the possession of co-defendant); (5) the admission by appellant himself at the murder scene that he shot the victim when he stated to the sister of the victim (who was an eyewitness to the shooting) that, "I am sorry Shirley. I didn't know that was your brother. I had to hurt somebody." (N.T. 282).

It is clear beyond doubt that, even if the absent witness could have been found and presented as a witness during the defense, his testimony would not have been helpful or of value to the defendant. Therefore, we cannot say appellant was denied the effective assistance of counsel at trial and concur with the decision of the majority to reverse the Order granting appellant a new trial. *See Commonwealth v. Warner*, 277 Pa.Super. 598, 419 A.2d 1312 (1980); *See also Commonwealth v. Ashley*, 277 Pa.Super. 287, 419 A.2d 775

44

(1980). (The bare assertion of appellant that trial counsel was ineffective for failing to call a witness did not entitle appellant to post-conviction relief where the PCHA petition failed to indicate whether the witness was available to testify and further neglected to mention what the nature of the testimony would be); *Commonwealth v. Bandy*, 494 Pa. 244, 431 A.2d 240 (1981) (defendant was not denied effective assistance of counsel in entering a plea of guilty to murder and related charges even though counsel failed to interview witnesses to stabbing-murder and instead relied upon the apparent strength of the prosecutor's file where statements of witnesses and co-conspirators were extremely damaging and defendant did not claim the existence of a possible defense which counsel failed to explore); *Commonwealth v. Hoyle*, 274 Pa.Super. 220, 418 A.2d 376 (1979) (defendant was not denied the effective assistance of counsel by attorney's failure to interview potential witnesses because of the strength of the Commonwealth's evidence based on the testimony of five eyewitnesses who directly implicated the appellant in the crime).

Our analysis of the facts of this case and the applicable principles of law compels the conclusion that the Order granting a new trial should be reversed. As a result, I need not here consider or discuss whether the failure of a defendant to testify at the trial is a factor to be weighed when a court in subsequent PCHA proceedings scrutinizes a claim of ineffective counsel.

I would reverse the Order of the Common Pleas Court granting a new trial, deny the motion for a new trial and direct the defendant to forthwith appear for the imposition of sentence upon the charge of murder in the second degree, the charges or robbery and the charge of possession of an instrument of crime.

SHERTZ, J., did not participate in the decision of this case.