J-S49002-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| ANTHONY MORGAN | : | |
| Appellant | : | No. 83 WDA 2016 |

Appeal from the PCRA Order December 7, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0010913-2011

BEFORE:     DUBOW, J., SOLANO, J., and FITZGERALD J.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED SEPTEMBER 07, 2017**

Appellant, Anthony Morgan, appeals from the Order entered in the Allegheny County Court of Common Pleas denying his first Petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-46. Upon careful review, we affirm.

This Court summarized the pertinent facts of Appellant's underlying conviction for First-Degree Murder on direct appeal.  ***See Commonwealth v. Morgan***, No. 599 WDA 2013, unpublished memorandum at 2-5 (Pa. Super. filed May 23, 2014).  We briefly summarize the facts and procedural history relevant to the instant appeal as follows.

_____

[*] Former Justice specially assigned to the Superior Court.

The victim in this case, Deon Thomas, was a drug dealer whose customers included Appellant. The evening of September 1, 2004, the victim's girlfriend, Crystal McHirella, discovered the victim lying dead in a pool of blood on the floor of his entryway. The victim had been stabbed multiple times, with at least five fatal stab wounds to his neck and trunk. The victim had also suffered blunt force trauma to his face, neck, extremities, and back.

Police investigators questioned Appellant in October of 2004 regarding the murder. Appellant denied any involvement in the victim's death, and stated that he had only ever been in the living room of the victim's home. Investigators released Appellant, and the case went cold after 2004.

In 2010, investigators reopened the case and obtained a warrant to collect DNA from Appellant to compare to evidence collected at the crime scene. Appellant's DNA matched a sample recovered from the victim's sink, and Appellant was identified as a possible contributor to a mixed DNA sample recovered from the murder weapon.

After investigators collected his DNA, Appellant went into hiding. In August of 2011, however, investigators located and arrested Appellant and charged him with one count of Criminal Homicide.

Appellant elected to proceed by way of a jury trial. He presented a theory of self-defense to the jury, testifying that the victim had attacked him with a knife without warning and he had stabbed the victim after disarming

him. The jury did not believe Appellant's self-defense claims, and on November 1, 2012, it found Appellant guilty of First-Degree Murder. The trial court sentenced him to a mandatory term of life imprisonment.

On appeal, this Court rejected Appellant's claim that the evidence was insufficient to disprove his self-defense claim, and we affirmed his Judgment of Sentence on May 23, 2014. *Id.*

On June 19, 2015, Appellant timely filed a *pro se* PCRA Petition. The PCRA court appointed PCRA counsel, who filed a Petition to Withdraw as counsel and an accompanying no-merit letter pursuant to ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988), and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). In the letter, PCRA counsel identified and addressed sixteen claims.

On November 17, 2015, the PCRA court granted PCRA counsel's Petition to Withdraw and filed a Notice of Intention to Dismiss PCRA Petition Without a Hearing, pursuant to Pa.R.Crim.P. 907. The PCRA court's Order gave Appellant twenty days in which to file a response.

On December 7, 2015, Appellant filed a *pro se* Response to the PCRA court's Rule 907 Notice restating the sixteen claims identified by PCRA counsel and identifying two additional claims. The next day, the PCRA court dismissed Appellant's Petition.

Appellant filed a timely appeal. In response to a PCRA court Order, Appellant filed a Pa.R.A.P. 1925(b) Statement that failed to include most of

the issues raised in his PCRA Petition, and raised numerous claims not previously raised. The PCRA court filed a responsive 1925(a) Opinion in which it concluded that most, if not all, of Appellant's claims were waived.

On appeal, Appellant raises the following ten claims, copied *verbatim* but reordered for ease of disposition:

1. Whether Appellant was entitled to PCRA relief in the form of an evidentiary hearing and/or a new trial as a result of being denied a fair trial; where the trial Court erred in "NOT" making a ruling on Appellant's Omnibus pretrial motion; specifically where the Court denied Appellant 'any' ruling; complete denial of the 14th Amendment's Due Process. Subsequently, the 'only' hearing held here was a Statues hearing where Appellant was told to cooperate with counsel, and where Appellant pleaded for Court appointed counsel?

2. Did the PCRA Court err, "abusing it's discretion", where the Court denied Appellant PCRA relief in the form of an evidentiary hearing and/or a new trial as a result of being 'denied' a fair trial as a result of trial, appellate and PCRA counsel's ineffectiveness, i.e. ["layered-claim"] of ineffectiveness? Appellate asserts' due to 'all' counsel's ineffectiveness he was 'denied' the adversary processes' challenges' of:

(a). Counsel's failure to thoroughly investigate the case;

(b). Trial counsel's investigator was deficient and 'failed' to adequately investigate the case, including, failure to investigate the crime scene, interview witnesses', investigate evidence and, recreate the crime scene;

(c). Trial counsel's failure to investigate Appellant's clothing;

(d). Trial counsel's failure to present character witnesses' in favor of Appellant, and rebutted evidence in opposition to the Commonwealths evidence;

(e). Trial counsel's "ill[-]advising" Appellant to take the stand;

- 4 -

(f). Trial counsel "ill[-]advisement", waiving a pre-Sentence investigation which would have (est)ablished Appellant suffered from multiple diagnoses' of mental illnesses', and;

(g). A conflict of interest between Appellant/trial counsel, and appellate counsel, where Appellant requested counsel be removed and new counsel be appointed?

3. Did the PCRA Court err where Appellant was entitled to PCRA relief in the form of an evidentiary hearing and/or a new trial as a result of being denied effective assistance of counsel, where trial counsel's private investigator leaked information in regards to Appellant's clothing?

4. Did the PCRA Court err where Appellant was entitled to PCRA relief in the form of an evidentiary hearing and/or a new trial as a result of being denied effective assistance at trial, where counsel at Suppression Motion's withdrew motion, rendering counsel deficient---specifically, where Appellant was illegally questioned by police---complete denial of **Miranda** rights'?

5. Did the PCRA Court err denying Appellant PCRA relief in the form of an evidentiary hearing and/or a new trial, where during trial, the [B]ench had "abused it's discretion"---taking second degree off the table and proceeding upon the Prosecutions reasoning for wanting to proceed on first degree murder. In which, the prosecution offered 'no' further evidence to have supportted first degree---the prosecution only offered it's theory; subsequently, theory alone is 'not' sufficient evidence enough to request, and for the [B]ench to GRANT a first degree instruction. Thus, the juries' instruction was based on the Court's err and abuse alone?

6. Did the PCRA Court err denying Appellant an evidentiary hearing and/or a new trial where exculpatory evidence existed, mainly, finger[-]nail marks', and abrasion's to the knees' and shins of the deceased---and because Appellant had testified at trial that, the deceased was on top of him when Appellant himself, disarming the deceased of the knife and stabbing the deceased and where the foot[-]stool had aligned perfectly to the deceased's knees' and shins, clearly (est)ablishing that the victim "NOT" only being on top of Appellant, but also being the deceased was the aggresser?

7. Did the PCRA Court err denying Appellant PCRA relief in the form of an evidentiary hearing and/or a new trial, where the prosecution committed, "prosecutorial misconduct", inasmuch imparting fabricated evidence to the jury of Appellants' prior arrest photograph used falsely showing Appellant being big/muscular weighing 207, rather than Appellant's photograph at the time of the arrest of the case, where Appellant weighed 170 pds.---well (est)ablished fabrication?

8. Did the PCRA Court err, denying Appellant PCRA review in the form of an evidentiary hearing, where the Court 'denied' Appellant his Due Process and Procedural Due Process right to Supplement/Amend his PCRA for purposes' of review; and where the PCRA Court 'failed' to [make] a ruling on Appellants' 907 objection?

9. Did the PCRA Court err where Appellant was entitled to PCRA relief in the form of an evidentiary hearing and/or a new trial as a result of being denied effective counsel, where counsel 'failed' to cross-examine Crystal Mchirella as being a victim of the deceased's violent behavior, which had included indecent assault and assault. Well (est)ablished indirect evidence that the deceased was the aggressor in this case? Citing, [**Com. V. Carbone**; 707 A.2d 1145 (Pa.Super. 1998)].

10. Was Appellant entitled to PCRA relief in the form of an evidentiary hearing as a result of being denied a fair trial, where the Prosecuting attorney committed a **Brady** violation---violating Appellant's Due Process right's where a DNA sample was taken from Appellant on, (10/8/04), but, Appellant wasn't arrested with the 'alleged' murder until [2011]?

Appellant's Brief at 1-4 (capitalizations, typographical errors, misspellings, and punctuation including bracket and parentheses in original).

When reviewing the denial of a PCRA Petition, "we examine whether the PCRA court's determination is supported by the record and free of legal error." **Commonwealth v. Fears**, 86 A.3d 795, 803 (Pa. 2014) (internal quotation marks and citation omitted). "The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light

most favorable to the prevailing party at the trial level." ***Commonwealth v. Spotz***, 84 A.3d 294, 311 (Pa. 2014) (citation omitted). When the PCRA court denies a petition without an evidentiary hearing, we "examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing." ***Commonwealth v. Khalifah***, 852 A.2d 1238, 1240 (Pa. Super. 2004) (citation omitted).

### Waived Claims

Appellant waived his first seven claims, including the subissues, by failing to raise them before the PCRA court. "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). This requirement also acts to bar an appellant from raising "a new and different theory of relief" for the first time on appeal. ***Commonwealth v. York***, 465 A.2d 1028, 1032 (Pa. Super. 1983).

In the instant case, Appellant did not raise any of his first five issues on appeal in his Petition or his Response to the PCRA court's Rule 907 Notice. Appellant raised claims similar to his sixth and seventh issues before the PCRA court, but now relies upon "new and different" theories of relief.[1]

_____

[1] In his sixth claim, Appellant argues exculpatory evidence in the form of injuries to the victim's body. However, before the PCRA court, his exculpatory evidence claim was premised on a missing shirt. In his seventh
*(Footnote Continued Next Page)*

For all seven claims, Appellant failed to properly preserve them and they are, therefore, waived.

### **Appellant's Response to Notice of Intent to Dismiss**

In his eighth issue, Appellant avers that the PCRA court's failure to enter a separate Order specifically ruling on his Response to the PCRA court's Rule 907 Notice "was an error and complete deprivation of Appellant's right to be heard in [c]ourt[.]" Appellant's Brief at 13.

Appellant's Response to the PCRA court's Rule 907 Notice reiterated the sixteen claims raised in Appellant's counseled Petition and included two additional claims.[2] The PCRA court reviewed the Response and found each of the claims therein to be previously litigated and/or meritless. **See** Trial Court Opinion, filed 1/17/17, at 3-4. Appellant was not denied his right to "be heard" on his Response where, as the PCRA court noted, "all of the issues raised in Petitioner's [Response] were considered by [the PCRA c]ourt when it issued the final dismissal [O]rder in this case." **Id.** at 4.

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

claim, Appellant argues that prosecutorial misconduct resulted in the jury seeing misleading photos of his physique. Before the PCRA court, however, Appellant premised this claim on a theory of ineffective assistance of counsel.

[2] The additional claims raised by Appellant in his Response were (i) a rewording of an ineffective assistance of counsel claim previously included in his counseled Petition, and (ii) a statement of Appellant's intention to "challenge and preserve his self-defense" claim. **See** Response to Notice of Intent to Dismiss, filed 12/7/15, at 6.

Appellant asserts that the Order dismissing his PCRA Petition was insufficient to address his Response, and that the PCRA court was required to enter an order specifically "granting or denying" his Response. Appellant's Brief at 11. However, Appellant does not cite to any authority requiring the PCRA court to issue a formal order "granting or denying" a response to a Rule 907 Notice of Intent to Dismiss. To the contrary, Rule 907 mandates that, where a Response is filed, the PCRA court "shall order the petition dismissed, grant leave to file an amended petition, or direct that the proceedings continue." Pa.R.Crim.P. 907(1). It does not require a separate order.

The PCRA court properly ordered Appellant's Petition dismissed, in accordance with the dictates of Rule 907. Accordingly, the PCRA court did not err, and Appellant is not entitled to relief on this claim.

### Cross-Examination of Crystal McHirella

In his ninth issue, Appellant avers that trial counsel was ineffective for failing to cross-examine the victim's girlfriend, Crystal McHirella, about the victim's alleged history of violence towards her. Specifically, Appellant avers that the victim previously committed acts of indecent assault, assault, and unlawful restraint against McHirella, and that trial counsel should have cross-examined her about those events to bolster Appellant's theory that the victim was the initial aggressor in the instant case.

In analyzing claims of ineffective assistance of counsel, we presume that counsel was effective unless the PCRA petitioner proves otherwise. **Commonwealth v. Williams**, 732 A.2d 1167, 1177 (Pa. 1999). In order to succeed on a claim of ineffective assistance of counsel, Appellant must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's performance lacked a reasonable basis; and (3) that the ineffectiveness of counsel prejudiced the appellant. **Commonwealth v. Fulton**, 830 A.2d 567, 572 (Pa. 2003). Appellant bears the burden of proving each of these elements, and his "failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." **Commonwealth v. Daniels**, 963 A.2d 409, 419 (Pa. 2009) (citation omitted).

We note that Appellant did not present any evidence of the victim's alleged violent acts toward McHirella to the PCRA court. On appeal he concedes that he "cannot provide proof" that the victim assaulted McHirella, but states that "this information will be easy for the courts to obtain." Appellant Brief at 34.1 (unpaginated document inserted between the 34th and 35th pages of Appellant's Brief). It is not this Court's role to develop and advance claims on Appellant's behalf. **See Commonwealth v. Hardy**, 918 A.2d 766, 771 (Pa. Super. 2007) (stating that this Court "will not act as counsel and will not develop arguments on behalf of an appellant").

- 10 -

Moreover, Appellant has failed to establish that his claim is of arguable merit; *i.e.*, that the allegations of sexual violence would have been admissible at trial. As our Supreme Court has explained, "testimony as to the victim's character is admissible for the following purposes: (1) to corroborate the defendant's alleged knowledge of the victim's violent character to corroborate the defendant's testimony that he had a reasonable belief his life was in danger[;] and (2) to prove the allegedly violent propensities of the victim to show he was the aggressor." **Commonwealth v. Smith**, 416 A.2d 986, 988 (Pa. 1980). Generally, character evidence is only admissible in the form of reputation testimony. **Id.**

There are two exceptions that apply in self-defense claims and permit defendants to introduce prior acts of the victim. First, prior violent acts of the victim are admissible at trial to show the defendant's state of mind, whether or not the victim was convicted of these acts, where the defendant can show that he was aware of these acts at the time of the offense. **Id.** Second, prior violent acts of the victim may be introduced as propensity evidence, but only where those prior violent acts resulted in a conviction. **Id.**

In the instant case, Appellant has failed to establish the existence of any relevant, admissible evidence of the victim's violent behavior. He does not aver that witnesses were available who could have testified to the victim's reputation for violence. Nor does he aver that, at the time of the

victim's murder, he was aware of the alleged sexual violence towards McHirella, a requirement to admissibility under the first exception discussed in **Smith, supra**. Finally, Appellant does not aver that the victim's violent acts against McHirella resulted in a conviction as required under the second exception discussed in **Smith**.

Having concluded that Appellant failed to establish the existence of these alleged violent acts, or their admissibility at trial, we conclude that Appellant is not entitled to relief on this claim.

### **Brady Claim**

In his final claim, Appellant purports to raise a claim pursuant to **Brady v. Maryland**, 373 U.S. 83 (1963). Specifically, Appellant avers that the Commonwealth violated **Brady** "where a DNA sample was taken from Appellant on [October 8, 2004,] yet [Appellant] wasn't arrested [for] the 'alleged' Murder until . . . 2011." Appellant's Brief at 36.

Appellant's reliance on **Brady** is misplaced. As our Supreme Court has noted, "[t]he law governing alleged **Brady** violations is well-settled." **Commonwealth v. Lambert**, 884 A.2d 848, 853 (Pa. 2005). It is a violation of a defendant's right to due process for the Commonwealth to "withhold[] evidence that is favorable to the defense and material to the defendant's guilt or punishment." **Smith v. Cain**, 132 S. Ct. 627, 630 (2012) (citation omitted).

To prevail on a claim that the Commonwealth has committed a **_Brady_** violation, "an appellant must prove three elements: (1) the evidence at issue is favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued." **_Commonwealth v. Weiss_**, 81 A.3d 767, 783 (Pa. 2013) (citations omitted).

In the instant case, Appellant does not aver the existence of any evidence favorable to his case, nor does he assert that the prosecution suppressed any evidence. Instead, his disjointed argument complains about the delay between an alleged DNA collection in 2004 and his arrest in 2011. There is nothing in our reading of **_Brady_** that would give rise to such a claim.

Moreover, Appellant bases this alleged **_Brady_** claim on a misstatement of the facts presented in the instant case. Although unknown DNA samples were recovered from the crime scene in 2004, investigators had no DNA to which to compare the samples. Contrary to his assertions, investigators did not obtain a DNA sample from Appellant until 2010. It was then that testing revealed that the samples obtained from Appellant matched the unknown samples recovered in 2004. Once investigators obtained conclusive DNA evidence matching Appellant to the crime, the only delay in prosecution was caused by Appellant's own efforts to abscond from justice.

Having concluded that Appellant is not entitled to relief on any of the claims presented, we affirm the PCRA court's Order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/7/2017