J-S25005-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| PAUL CHARLES HELMICK | : | |
| | : | |
| Appellant | : | No. 785 WDA 2017 |

Appeal from the PCRA Order April 25, 2017
In the Court of Common Pleas of Washington County
Criminal Division at No(s):  CP-63-CR-0000552-2012

BEFORE:  GANTMAN, P.J., PANELLA, J., and OTT, J.

MEMORANDUM BY GANTMAN, P.J.:              **FILED AUGUST 15, 2018**

Appellant, Paul Charles Helmick, appeals *pro se* from the order entered in the Washington County Court of Common Pleas, which denied his first petition brought pursuant to the Post-Conviction Relief Act ("PCRA").[1]  We affirm.

In its opinions, the PCRA court fully and correctly set forth the relevant facts and most of the procedural history of this case.[2]  Therefore, we have no reason to restate them.  We add that on April 18, 2017, Appellant responded

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

[2] On page 9, line 19, of the PCRA court's Rule 907 notice opinion, the citation should be a full cite to **Commonwealth v. Charles Pierce**, 515 Pa. 153, 158, 527 A.2d 973, 975 (1987), to distinguish it from **Commonwealth v. Michael Pierce**, 567 Pa. 186, 203, 786 A.2d 203, 213 (2001), cited earlier on that page of the court's opinion, which was later abrogated on other grounds by **Commonwealth v. Grant**, 572 Pa. 48, 813 A.2d 726 (2002).

*pro se* to the PCRA court's Pa.R.Crim.P. 907 notice. The PCRA court denied

PCRA relief on April 25, 2017. On May 25, 2017, Appellant timely filed a *pro*

*se* notice of appeal. The PCRA court did not order and Appellant did not file a

concise statement of errors complained of on appeal pursuant to Pa.R.A.P.

1925(b).

Appellant raises the following issues for our review:

> 1) WAS TRIAL COUNSEL INEFFECTIVE FOR FAILING TO SECURE THE SERVICES OF A MEDICAL/FORENSIC EXPERT TO REVIEW THE VICTIM'S INJURIES AND BLOOD SPATTER EVIDENCE AND CALL AN EXPERT AT TRIAL AFTER THE TRIAL COURT HAD APPROVED THE RELEASE OF FUNDS FOR THAT PURPOSE?
>
> 2) WAS TRIAL COUNSEL INEFFECTIVE FOR FAILING TO SEEK TO SUPPRESS AND/OR EXCLUDE OR OTHERWISE OBJECT TO THE COMMONWEALTH'S USE OF AN UNRELIABLE STATEMENT MADE BY [APPELLANT] WHILE HE WAS IN A HIGHLY INTOXICATED STATE THAT WAS EXPLOITED BY THE COMMONWEALTH AT TRIAL?
>
> 3) DID TRIAL COUNSEL PERFORM INEFFECTIVELY BY FAILING TO CALL OTHER FACT WITNESSES TO THE STAND PREVIOUSLY IDENTIFIED BY [APPELLANT] CAPABLE OF REFUTING THE LAY WITNESS TESTIMONY OFFERED BY THE COMMONWEALTH WITH REGARDS TO THE SERIOUSNESS OF [VICTIM'S] INJURIES AFTER THE ACCIDENT THAT WERE EXAGGERATED AT TRIAL TO NEGATE SERIOUS BODILY INJURY?
>
> 4) WAS TRIAL COUNSEL INEFFECTIVE FOR OBJECTING TO THE COMMONWEALTH'S REQUEST TO REMOVE JUROR #2 FOR CAUSE WITHOUT FIRST CONSULTING WITH [APPELLANT] AND INSISTING UPON *VOIR DIRE* OF THE JUROR IN A SEPARATE HEARING WHERE THE JUROR WAS INATTENTIVE THROUGHOUT THE ENTIRE TRIAL AND IGNORING EVIDENCE BEING PRESENTED?
>
> 5) DID TRIAL COUNSEL PERFORM INEFFECTIVELY BY

FAILING TO OBJECT TO THE ADMISSION OF PRIOR BAD ACTS TESTIMONY FROM [VICTIM] AGAINST [APPELLANT] ABSENT A SUFFICIENT OFFER OF PROOF WHERE SAID ACTS WERE NEVER CRIMINALLY CHARGED?

6) WAS TRIAL COUNSEL INEFFECTIVE FOR FAILING TO RECALL [APPELLANT], TAMMY SPROWLS AND JAMES HOBAN TO THE STAND IN SURREBUTTAL TO REFUTE [VICTIM'S] DAMAGING PRIOR BAD ACTS TESTIMONY DENYING [APPELLANT] HIS RIGHT TO TESTIFY IN HIS OWN DEFENSE AND A FAIR TRIAL?

7) WAS TRIAL COUNSEL INEFFECTIVE FOR FAILING TO OBJECT TO THE TRIAL COURT'S GIVING OF AN UNWARRANTED JURY CHARGE ON VOLUNTARY INTOXICATION WHERE A VOLUNTARY INTOXICATION DEFENSE WAS NOT PRESENTED AT TRIAL [APPELLANT] WAS PREVENTED BY THE COURT FROM USING INTOXICATION TO EXPLAIN THE MAKING OF AN UNRELIABLE STATEMENT?

8) IS THE ORDER OF APRIL 25, 2017[,] DENYING PCRA RELIEF WITHOUT A HEARING A FINAL ORDER WHERE NOT ALL ISSUES WERE ADDRESSED BY THE PCRA COURT?

(Appellant's Brief at 4-5).

As a prefatory matter, "issues not raised in the [PCRA] court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a); *Commonwealth v. Mason*, 634 Pa. 359, 130 A.3d 601 (2015) (stating failure to include issue in PCRA petition or in court-approved amendment to petition constitutes waiver). Instantly, in his supplemental PCRA petition, Appellant raised an issue of trial court error for giving a voluntary intoxication instruction to the jury. In his appellate brief, however, Appellant styled issue seven under the framework of ineffective assistance of counsel for failing to object to the trial court's jury instruction of voluntary intoxication. Therefore, this issue is

- 3 -

waived because Appellant did not raise this distinct claim before the PCRA court in the first instance. *See id.*

Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error. *Commonwealth v. Conway*, 14 A.3d 101, 109 (Pa.Super. 2011), *appeal denied*, 612 Pa. 687, 29 A.3d 795 (2011). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. *Commonwealth v. Boyd*, 923 A.2d 513, 515 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). We give no such deference, however, to the court's legal conclusions. *Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa.Super. 2012). Further, a petitioner is not entitled to a PCRA hearing as a matter of right; the PCRA court can decline to hold a hearing if there is no genuine issue concerning any material fact, the petitioner is not entitled to PCRA relief, and no purpose would be served by any further proceedings. *Commonwealth v. Wah*, 42 A.3d 335, 338 (Pa.Super. 2012); Pa.R.Crim.P. 907.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinions of the Honorable Gary M. Gilman, we conclude Appellant's issues merit no relief. The PCRA court opinions comprehensively discuss and properly dispose of the questions presented. (*See* PCRA Court Rule 907 Order and Notice Opinion, filed March 8, 2017, at 10-18, 23) (finding: **(1)** (pgs 10-12) Appellant did not identify

potential expert witness and rests his ineffective assistance claim solely on speculation that such witness might have existed and opined favorably to advance Appellant's defense; Appellant's bald assertion and speculation does not constitute ineffective assistance of counsel; further, after colloquy, Appellant voluntarily withdrew trial continuance request on July 9, 2012, with knowledge that potential expert might not have time to review evidence properly or testify at trial;[3] **(2)** (pgs 15-16) Appellant's own statement, "I killed that bitch dead," made on night of incident, falls under hearsay rule exception of admission by party-opponent; Appellant would not have prevailed on motion to suppress statement, and counsel cannot be ineffective for failing to pursue meritless claim; **(3)** (pgs 12-15) regarding Appellant's claim that trial counsel failed to call Linda Barton, Tasha Garcia, Christy Garcia, and Ryan Gallagher, police report indicated that all four witnesses heard Appellant "beating on the door, but did not witness anything"; Appellant's conjecture that these potential witnesses would have offered favorable evidence to defense does not merit relief; Appellant's complaint that trial counsel failed to call other witnesses cannot satisfy prejudice prong of ineffective assistance

---

[3] To the extent the PCRA court also discusses trial counsel's "reasonable basis" regarding the forensic evidence admitted at trial, we decline to affirm on that ground, because the PCRA court did not hold an evidentiary hearing. **See Commonwealth v. Hanible**, 612 Pa. 183, 211, 30 A.3d 426, 442 (2011), cert. denied, 568 U.S. 1091, 133 S.Ct. 835, 184 L.Ed.2d 662 (2013) (stating PCRA court generally "should not glean from record whether counsel had a reasonable basis for his action or inaction absent evidentiary hearing).

test because those witnesses were not eyewitnesses and Appellant cannot show there is reasonable probability that their testimony would have changed outcome of trial; **(5-6)** (pgs 17-18) Appellant employs hindsight analysis in argument, which does not satisfy test for ineffective assistance of counsel; Appellant discusses several instances where he believes counsel should have objected or recalled witnesses, but Appellant does not demonstrate prejudice; **(8)** (pg 23) Appellant did not raise any genuine issue of material fact in his PCRA petition to warrant evidentiary hearing or PCRA relief). *See also* PCRA Court Order and Opinion, filed April 25, 2017, at 2-3 (finding: **(4)** at trial, Commonwealth moved to strike Juror #2 based on observations that Juror was looking at ground throughout trial, did not make eye contact with attorneys or witnesses, and generally appeared hostile; defense counsel objected to Commonwealth's motion based on counsel's observations that Juror had made eye contact and appeared attentive; defense counsel noted that while Juror "seems somewhat on the hostile side…[d]efensively, it's a tactic that can work for me"; there was insufficient evidence to remove Juror; trial court noted both attorneys accepted Juror through *voir dire*, and there was no evidence of sleeping, dozing, or not paying attention to testimony; Appellant's ineffective assistance of counsel claim for this issue lacks arguable merit). The record supports the PCRA court's reasoning. Accordingly, we affirm on the basis of the PCRA court opinions.

Appellant has also filed a motion to compel the preservation of all

evidence in this criminal matter, pending the exhaustion of appellate remedies. We grant Appellant's motion for the preservation of evidence at this time. Upon the resolution of all appeals, the Commonwealth can move the trial court for permission to dispose of the preserved criminal evidence in due course.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/15/2018

IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA )
)
)
)
v. ) No.  CR 552 - 2012
)
)
PAUL CHARLES HELMICK )
Defendant. )
)

**ORDER and NOTICE**

**AND NOW**, this 7th day of MARCH, 2017, upon consideration of the Motion to Withdraw as Counsel, it is hereby ORDERED, ADJUDGED, and DECREED that the Motion is GRANTED and it is further ORDERED that the appearance of Stephen Paul, Esq., on behalf of the Defendant be withdrawn from the record in the above-captioned case.

It is further ORDERED that the Defendant is served notice of the Court's intention to dismiss his Post-Conviction Relief Act Petition without a hearing because the Court agrees that there are no genuine issues of material fact in the claims raised by the Defendant and said claims do not entitle the Defendant to post-conviction collateral relief as further described below and in the no-merit letter filed by his former court-appointed counsel, Stephen Paul, Esq.

It is further ORDERED that the Defendant's petition will be dismissed on April 6, 2017, which is no less than 30 days from the date of this Order and Notice, in accordance with Pennsylvania Rule of Criminal Procedure 907 unless the Defendant, either representing himself or through privately retained legal counsel, responds to this Order and Notice demonstrating why

the Court should not dismiss the Defendant's *pro se* petition for relief under the Post-Conviction Relief Act.

This Court performed an independent review of the record and appointed counsel's *Turner/Finley* letter. This court's reasoning regarding the issues the Defendant raised in his PCRA petition is below.

## Factual Background and Procedural History

The Superior Court has previously laid out the facts of this case in detail. Consequently, this Court need not reinvent the wheel and will present the facts as the Superior Court did in its Memorandum dated November 12, 2013.[1]

> This case stems from the victim, Lori Phillips, being struck in the head with a sledgehammer by the Defendant on the morning of January 29, 2012. The victim testified that her two-year relationship with the Defendant ended a few weeks before the incident occurred but stated that they remained friends. [Transcript of Jury Trial Held on July 17, 2012] at p. 34. She testified that the Defendant had asked to speak with the victim on a daily basis so he could hear her voice to help him get over the break up. *Id.* at p. 35.
>
> The victim testified that on January 28, 2012 she invited the Defendant to her apartment after he called her upset over the break up. When the Defendant arrived, the victim's friend, Tammy Sprowls ("Sprowls"), was also at the apartment. *Id.* The victim could not recall how long the Defendant was there as she had experienced memory loss since the incident. *Id.* at p. 36-37. However, she did remember instructing the Defendant and Sprowls to leave after the Defendant spilled vodka on her during an argument. The Defendant and Sprowls left after the victim threatened to call the police.
>
> Louis "Louie" Phillips ("Louie"), the victim's ex-brother-in-law, visited her at the apartment around 5:00 a.m. The Defendant and Sprowls then began repeatedly calling the victim. *Id.* at 39. Louie eventually quit answering the phone, but not before the Defendant told the victim "I know there is somebody up there, I'm going to kill you." *Id.* at 40. Soon after this phone call, the victim heard a loud vehicle in the parking lot which she thought sounded like the Defendant's pickup

---

[1] For consistency purposes, this Court has replaced the term "appellant" as used in the Superior Court's Memorandum dated November 12, 2013, 1600 WDA 2012, with the term "Defendant" in the above factual background. In addition, this Court notes that the 1925(a) opinion of the trial court at the time of the Defendant's direct appeal contains a lengthy and detailed recitation of the facts.

truck. She looked out the window of her apartment and saw the Defendant park his truck, exit the truck, and grab a sledgehammer while saying "I'm coming to get you." *Id.* at 41.

The Defendant made his way into the apartment building where he proceeded to strike the victim's apartment door with the sledgehammer. The victim testified that she remained in the middle of the entranceway that led up to her front door, and that she never got near the front door while the Defendant was hitting it with the sledgehammer. The Defendant broke the door down when the sledgehammer connected on its third hit. *Id.* at p. 42. The last thing the victim remembers while being in her apartment was the Defendant standing in her front door after he broke it open. The next thing she remembered was waking up in a medical helicopter, feeling blood trickling down the back of her head, and hearing the flight medic say "You're not going to die on my shift." *Id.*

The victim was flown to UPMC Presbyterian Hospital where she remained for eleven days. She testified that her injuries were significant and consisted of a right side skull fracture, six staples in her head, trauma in the middle ear, calcium deposits in her ear due to broken bones, consistent ringing in her right ear, a cracked rib, and a blood clot in the left side of her head. She stayed at her mother's house for about two weeks after being released from the hospital. The victim still experiences dizzy spells, headaches, her jaw cracking, her ear feeling like it is full of cotton, and persistent ringing in her right ear. *Id.* at 43-44.

On cross-examination, the victim testified that she was with the Defendant and Sprowls the night before the injury drinking vodka mixed with Coke; the victim drank about three glasses but was still aware of what was going on around her. The victim testified that she thought the incident may have been an "accident" due to the involvement of alcohol. *Id.* at 49. The victim does not remember seeing a sledgehammer when the Defendant broke down the door, and may have turned around with the Defendant entered her apartment. *Id.* at 50-51.

Trisha Church ("Church"), the victim's neighbor, also testified for the Commonwealth. Church recalled that she had previously seen the Defendant in the building. *Id.* at 64-65. On the morning of January 29, 2012, she heard three or four loud bangs on the victim's front door accompanied by screaming. She recalled hearing someone say "I killed the bitch dead" right before she exited her apartment and entered the hallway. *Id.* at 66. She stayed with the victim until paramedics arrived. On cross-examination, she testified that she had told a state trooper that during the banging she heard a male voice say, "Where's Louie, I'm going to find him and kill him." *Id.* at 69.

Tara Whiteman ("Whiteman") lived directly across the hall from the victim. Whiteman testified that while sleeping on the night of January 29, 2012, she awoke to the sound of four very loud banging or pounding sounds about 30 feet from her bedroom. *Id.* at 75-76. Whiteman left her bedroom and walked out into

3

the building hallway where she saw the Defendant, who she had known most of her life, walk out of the victim's apartment with a sledgehammer and close the door slowly behind him. When Whiteman asked what he was doing, the Defendant responded, "I killed that bitch dead" as he proceeded to leave the apartment building. *Id.* at 78. Whiteman then pushed open the victim's door and found the victim lying face down at the end of an entryway in a pool of blood with her feet pointing towards the front door.

Photographs were taken of the dented front door, the stairwell leading up to the hallway, the broken dead bolt and door frame, a pool of blood on the floor toward the end of the entranceway, and blood spatter marks on the wall next to the pool of blood. The Defendant was apprehended and his truck was seized. The sledgehammer was found behind the seat. The Defendant's clothing and shoes were also placed into evidence and sent for DNA testing.

Video surveillance footage of the apartment complex was obtained and depicted the Defendant's truck, the Defendant carrying an object with a long handle, and the Defendant wearing clothing matching what was recovered from his person. The footage showed the Defendant walking on the sidewalk and going up the stairs which lead to the side door near the victim's apartment. Based on the video, the Defendant was in the building for 90 seconds; he was seen returning to his truck and placing something in his truck bed.

The Defendant testified on his own behalf. He detailed his romantic relationship with the victim and denied her characterization of their break up, averring that she lied about his request for daily telephone calls. *Id.* at p. 206-07.[2] He characterized their relationship as "friends with benefits." [*Id.* at p. 237.] The Defendant averred that he had never laid a hand on the victim. [*Id.* at p. 243.]

[The Defendant testified that] on Saturday, January 28th, he was at the victim's apartment drinking vodka with her and Sprowls until one or two in the morning. A verbal argument took place and the victim asked the Defendant and Sprowls to leave. *Id.* at p. 209-13. The Defendant and Sprowls left but continued drinking together; he testified that at this point he had been awake for 30 to 36 hours. The Defendant explained that phone calls with the victim and Louie ensued and they all began to argue. The Defendant alleged that Louie threatened to damage his truck by placing ball bearings in his gas tank. *Id.* at p. 218. The Defendant noted the problems he had with Louie in the past. *Id.* at p. 214-17. The Defendant testified that his anger toward Louie motivated him to return to the victim's apartment in an effort to confront Louie and "smack him around a little bit." *Id.* at p. 221.

---

[2] This Court notes that the trial transcript contains a second cover page on page 198. This cover page marks the beginning of the defense's case and is titled "Jury Trial in the Above-Entitled Cause Before the Honorable Janet Moschetta Bell, Judge, Held on July 18, 2012 in Courtroom No. 6." For purposes of consistency and because of the continuous pagination, this Court references the trial transcript under the title of the first cover page—*i.e.*, "Transcript of Jury Trial Held on July 17, 2012".

The Defendant went to the victim's apartment before noon on the 29th and took his sledgehammer with him in case Louie refused to come out of the apartment. The Defendant testified he only intended to use the sledgehammer to knock the door down, not as a weapon. The Defendant stated that he began to hit the door with the sledgehammer and yelling, "where the H is Louie at . . . where you at, b-i-t-c-h, where you at, where you at Louis . . . ." *Id.* at p. 223. When the door finally broke open, the Defendant recalled seeing the victim approximately three to four feet in front of him. He testified that he used the sledgehammer to "push her out of the way" with a shoving motion; the Defendant denied hitting her with the sledgehammer. *Id.* at p. 224. He claimed the victim was about three or four feet away from the door. The Defendant testified that he did not realize the victim was hurt. *Id.* at p. 228. After deciding Louie was not there, the Defendant left. The Defendant testified that when he saw Whiteman in the hallway he sarcastically told her, "I killed the bitch dead" in reference to Louie. *Id.* at p. 228-29.

On cross-examination, the Defendant stated that he did not know if Louie was still in the apartment when he began striking the door. When asked "did the sledgehammer make any contact with her?" the Defendant responded, "evidently it did, but I didn't realize it did." *Id.* at p. 234. After looking at one of the Commonwealth's exhibits, the Defendant agreed that the bloodstain in the entranceway is farther than three to four feet, the distance he claimed the victim was standing when he entered the apartment. *Id.* at p. 231-37. The Defendant described the incident as an "accident." *Id.* at p. 237-40.

The Commonwealth then called the victim in rebuttal. She testified that the Defendant's statement that he had never laid a hand on her was not true. She recalled that the Defendant had punched her in the face about a year earlier. She also recalled two separate occasions in 2011 when the Defendant poured beer over her head, once in the company of Sprowls. *Id.* at p. 278-81.

Following the jury trial, the Defendant was convicted of criminal attempt-homicide, two counts of aggravated assault, and burglary. On October 10, 2012, he was sentenced to an aggregate sentence of 15 to 30 years of incarceration. On October 11, 2012, the Defendant filed a timely notice of appeal. The following issues were presented to the Superior Court for review:

1. Whether the Court erred/abused its discretion in not allowing the defense to call witnesses to rebut the testimony of the victim during cross-examination that the reason she told others the incident in question was an accident was because she felt alcohol had played a role?

5

2. Whether the Court erred/abused its discretion in allowing the prosecution to call the victim as a rebuttal witness to testify to specific instances in the past where the Defendant was physically violent towards her?

3. Whether the Defendant's sentence is reasonable in light of the circumstances?

On November 12, 2013, the Superior Court affirmed the trial court's judgment of sentence finding the Defendant's first claim to be meritless and the second and third claims to be waived. In response, on December 12, 2013, the Defendant filed a Petition for Allowance of Appeal from the Order of the Superior Court. The Supreme Court denied that petition on June 2, 2014. The Defendant filed a timely *pro se* PCRA petition on December 26, 2014. On January 5, 2015, the Washington Court of Common Pleas appointed Mary Bates, Esq. to represent the Defendant on his first petition for post-conviction relief. On March 11, 2015, Stephen Paul, Esq. was appointed to represent the Defendant thereby replacing Attorney Bates. On November 10, 2016, Attorney Paul presented a motion to withdraw as counsel to this Court in conjunction with a *Turner/Finley* letter. The Defendant submitted a *pro se* response to appointed counsel's motion and letter, which the Court received on November 30, 2016.

## Discussion of Law and Claims

The Defendant's PCRA petition is voluminous and contains a plethora of complaints. After careful review, it appears to the Court that a large part of the 126-page petition consists of a play-by-play appraisal of the trial by the Defendant. The Defendant examines the testimony of each witness, provides his take on that testimony, points out what he perceives as flaws or holes in the prosecution's case, asserts which facts are significant, discusses how those facts should have been interpreted, and so forth. These observations do not present grounds for relief under the PCRA. Subsumed within the Defendant's analysis, however, are claims of ineffective

6

assistance of counsel for various actions or inactions of Thomas Cooke, who represented the Defendant at trial. The Court will address these claims in turn.

The Defendant first raises a claim of ineffective assistance of trial counsel for failure to obtain a forensic/medical expert.[3] *See* Petition for Post-Conviction Collateral Relief from criminal Conviction Pursuant to the Post-Conviction Relief Act, p. 71 (hereafter "PCRA Petition"). The record reflects that prior to trial, Mr. Cooke filed a Petition to Retain Expert Witness in which he requested funds to secure the services of a DNA expert to explore any possible defenses. On May 24, 2012, Judge Janet Moschetta Bell signed an order authorizing Mr. Cooke to retain a DNA expert as an expert witness for a fee not to exceed $1,500. No expert witness was called on behalf of the Defendant at trial. Mr. Cooke has since passed away rendering it impossible to directly gain his insights into the trial strategy regarding this issue. A careful review of the record, however, reveals an Application for Continuance submitted by Mr. Cooke which states the following:

> And now, July 5, 2012, Defense Attorney, Thomas H. Cooke Esq. hereby requests a continuance as counsel asserts that the defendant has provided this office with numerous witnesses to interview before trial, medical data has not been received nor reviewed by defendant and possible experts and further DNA evidence has not been received and when received will take time to be reviewed by defense experts. Failure to exercise this aspect of legal representation for the defendant would be manifest injustice.

Beneath this request on the face of the continuance form, there is a handwritten notation: "7/9/12 withdrawn by defendant and counsel after colloquy on the record." The transcript of those proceedings is illustrative. Mr. Cooke indicates that he had since been provided with the medical reports that documented the nature of the victim's injuries and that he had reviewed them. Transcript of Hearing on Commonwealth's Motion to Amend and Defendant's Motion for

---

[3] The Court notes that the Defendant separates his first claim of ineffective assistance into three subsections, all of which concern obtaining and consulting with a forensic expert.

7

Continuance Held on July 9, 2012, pp. 2-3. Mr. Cooke then states that he does not have the DNA results and that his expert review might not come in due to timing. *Id.* at p. 4-5. In response to the trial court's question about how long it would take for his expert to review the DNA results, Mr. Cooke replied: "I'm not sure, because I'm not sure when—my expert is not available. We would not be able to pick a jury and go to trial." *Id.* at p. 5. Knowing that the Commonwealth had forensic evidence and that the defense's expert may not be available, the Defendant indicated that he still wished to pick a jury on July 9, 2012 and go to trial.[4] *Id.* at p. 4, 5. Consequently, Mr. Cooke withdrew the motion for continuance. *Id.* at p. 5.

Notwithstanding the July 9, 2012 proceedings concerning withdrawal of his request for a continuance, the Defendant claims in his PCRA petition that Mr. Cooke was ineffective for failing to consult with and call a forensic expert at trial. The Defendant argues that a forensic expert may have supported his defense that he accidentally struck the victim in the head with a sledgehammer. According to the Defendant, "[h]ad Attorney Cooke consulted a forensic/medical expert prior to trial, he would have been prepared to meaningfully challenge the Commonwealth's version of events and cast doubt on the evidence presented." PCRA Petition, p. 75.

The PCRA provides relief to those individuals whose convictions or sentences resulted from "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). The Pennsylvania Supreme Court "has interpreted this to mean that in order to obtain relief on a claim alleging ineffective assistance of counsel, a petitioner must prove that (1) the claim underlying the ineffectiveness claim has

---

[4] This Court notes a trial court order dated June 7, 2012. In that order, the trial court states that a plea offer was made to the Defendant on the record. The Defendant rejected that offer and "specifically requested trial as soon as possible."

8

arguable merit; (2) counsel's actions lacked any reasonable basis; and (3) counsel's actions resulted in prejudice to petitioner." *Commonwealth v. Cox*, 983 A.2d 666, 678 (Pa. 2009) (citations omitted). "Where it is clear that a petitioner has failed to meet any of the three, distinct prongs... the claim may be disposed of on that basis alone, without a determination of whether the other two prongs have been met." *Commonwealth v. Steele*, 961 A.2d 786, 797 (Pa. 2008). "[T]he law presumes that counsel was effective and the burden of proving that this presumption is false rests with the petitioner." *Cox*, 983 A.2d at 678.

"Prejudice in the context of ineffective assistance of counsel means demonstrating that there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different." *Commonwealth v. Pierce*, 786 A.2d 203, 213 (Pa. 2001). "Where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests." *Commonwealth v. Sneed*, 45 A.3d 1096, 1107 (Pa. 2012) (citing *Commonwealth v. Colavita*, 993 A.2d 874, 887). "A chosen strategy will not be found to have lacked a reasonable basis unless it is proven 'that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.'" *Commonwealth v. Williams*, 899 A.2d 1060, 1064 (Pa. 2006) (quoting *Commonwealth v. Howard*, 719 A.2d 233, 237 (Pa. 1998)). "The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record." *Pierce*, 527 A.2d at 975 (citations omitted). Put simply, a Defendant is not entitled to relief merely because a chosen strategy is unsuccessful.

When an allegation of ineffectiveness is based upon counsel's failure to call a witness, the petitioner must establish that: "(1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4)

9

the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial." *Sneed*, 45 A.3d at 1109. This test pertains equally to expert witness testimony. *Commonwealth v. Chmiel*, 30 A.3d 1111 (Pa. 2011). "The mere failure to obtain an expert rebuttal witness is not ineffectiveness. Appellant must demonstrate that an expert witness was available who would have offered testimony designed to advance appellant's cause." *Commonwealth v. Wayne*, 720 A.2d 456, 470-71 (Pa. 1998). "Trial counsel need not introduce expert testimony on his client's behalf if he is able effectively to cross-examine prosecution witnesses and elicit helpful testimony. Additionally, trial counsel will not be deemed ineffective for failing to call a medical, forensic, or scientific expert merely to critically evaluate expert testimony [that] was presented by the prosecution. Thus, the question becomes whether or not [defense counsel] effectively cross-examined [the Commonwealth's expert witness]." *Chmiel*, 30 A.3d at 1143 (quoting *Commonwealth v. Marinelli*, 810 A.2d 1257, 1269 (Pa. 2002)).

In the present case, the Defendant acknowledges that he is unable to meet the above five-prong test. *See* PCRA Petition, p. 87. The Defendant has failed to identify an expert witness and rests his claim of ineffective assistance of counsel solely on speculation that such witness may have existed and may have opined favorably to advance his defense. Without more to support the Defendant's claim than bald assertions and speculation, we cannot find counsel's failure to call an expert witness constitutes ineffective assistance. Further, the Defendant voluntarily withdrew the continuance request on July 9, 2012 knowing that a defense expert may not have time to review the evidence prior to trial and may not be available to testify. The Court finds it contradictory to now claim ineffective assistance of counsel on these grounds.

With respect to the forensic evidence presented at trial—namely, the DNA analysis—the Court notes that finding the victim's blood on the sledgehammer and the Defendant's shoes would be expected under the facts. The brief testimony of the Commonwealth's DNA expert, Angela DiFiore, simply verified that the samples taken from the sledgehammer and the Defendant's shoes matched the reference sample taken from the victim. As the Defendant points out in his PCRA petition, the fact that he hit the victim in the head with a sledgehammer is not in dispute. *See id.* at p. 74; *see also* Petitioner's Response to PCRA Counsel's (Stephen Paul's) Turner/Finley Letter and Motion to Withdraw as PCRA Counsel, p. 4 ("[T]he basis of the case is not if Petitioner hit Lori Phillips with a sledgehammer or not.... Petitioner freely admitted that he struck Ms. Phillips."). Accordingly, the introduction of an additional DNA expert by Mr. Cooke would have provided no beneficial testimony. Mr. Cooke did, however, press the Defendant's defense through cross examination. *See, e.g.*, Transcript of Jury Trial Held on July 17, 2012 at pp. 131-32, 170, 181. Contrary to the Defendant's assertion and as apparent from cross examination, Mr. Cooke did not depend solely on the Defendant's testimony. Moreover, a review of the trial transcript reveals that much of the defense relied upon highlighting certain forensic evidence not presented by the Commonwealth. For example, Mr. Cooke emphasized that the Commonwealth did not introduce evidence of any blood spatter on the Defendant's shirt or top of his shoes and that there had been no evidence of any tissue, skin, or hair on the sledgehammer. *See, e.g., id.* at pp. 129, 131-33, 181, 290-93. According to the defense, the reason this evidence was not presented was because the blow to the victim's head was an accidental glancing blow and not intentional. By not calling additional experts, Mr. Cooke avoided duplicative testimony and furthered his client's defense by drawing attention to a lack of

11

forensics. In other words, this strategy had some reasonable basis designed to effectuate the Defendant's interests.

In view of the above and considering that the Defendant did not meet his burden, the Court finds the Defendant's first claim of ineffective assistance of counsel fails. The Court reiterates that the law presumes that counsel was effective and that a Defendant is not entitled to relief merely because a chosen strategy is unsuccessful.

Turning to the second claim, the Defendant's argument that Mr. Cooke was ineffective for not "fully investigat[ing] the facts and circumstances" of the case fails as being undeveloped. *See* PCRA Petition, p. 78. The Defendant does not cite to anything in the record to support his many allegations that Mr. Cooke was unprepared for trial. The Defendant likewise does not state how these purported inactions prejudiced him such that there was a reasonable probability that the outcome of the trial would have been different. In other words, the Defendant has failed to set forth his claim pursuant to the three-prong test for establishing an ineffective assistance of counsel claim. The Defendant only makes bald assertions that Mr. Cooke's investigation fell below an objective standard of reasonableness. Our Supreme Court has held that "boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective." *Commonwealth v. Paddy*, 15 A.3d 431, 443 (Pa. 2011). Thus, the Court has no basis on which to conclude that Mr. Cooke was ineffective for failing to "fully investigate" the facts.

As part of his argument that Mr. Cooke was "grossly unprepared," the Defendant also claims that Mr. Cooke did not investigate and interview witnesses. "Neglecting to call a witness differs from failing to investigate a witness in a subtle but important way." *Commonwealth v. Stewart*, 84 A.3d 701, 712 (Pa. Super. Ct. 2013). It can be unreasonable to conduct no

12

investigation into known witnesses. *Id.* Importantly, a petitioner still must demonstrate prejudice. *Id.* "To demonstrate prejudice where the allegation is the failure to interview a witness, the petitioner must show that there is a reasonable probability that the testimony the witness would have provided would have led to a different outcome at trial." *Commonwealth v. Pander*, 100 A.3d 626, 639 (Pa. Super. Ct. 2014) (citation omitted). In this respect, as explained by the Superior Court, a failure to investigate and interview a witness claim overlaps with declining to call a witness since the petitioner must prove: (1) the witness existed; (2) the witness was available to testify; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify; and (5) the absence of the testimony was so prejudicial as to have denied the defendant a fair trial. *Id.* (citation omitted).

The Defendant's claim regarding expert witnesses is repetitive and was addressed by the Court above. With respect to the Commonwealth's witnesses, it appears that it is the Defendant's position that trial counsel is responsible for interviewing every Commonwealth witness prior to cross-examining him or her at trial. Similarly, the Defendant contends that Mr. Cooke should have interviewed individuals that potentially could have been called as witnesses, but were not. The Defendant, however, does not support this position with any legal argument or citation. In fact, our Supreme Court has stated that "we have never held that trial counsel is obligated to interview every Commonwealth witness prior to trial." *Commonwealth v. Washington*, 927 A.2d 586, 598 (Pa. 2007). Moreover, an independent interview is unnecessary if counsel can conclude prior to interview that a witness's testimony would be of no value or would damage the defense's case. *Commonwealth v. Smith*, 416 A.2d 986, 987-88 (Pa. 1980). Here, the potential witnesses identified by the Defendant—Linda Barton, Tasha Garcia, Christy Garcia, and Ryan Gallagher— were present in Whiteman's apartment on January 29, 2012. As set forth above, Whiteman lived

13

across the hall from the victim. According to the police report of the incident, which was drafted by responding officer Trooper Brian Jordan and was provided to Mr. Cooke, all four individuals heard the Defendant "beating on the door, but did not witness anything." Based on this, Mr. Cooke could reasonably conclude that Linda Barton's, Tasha Garcia's, Christy Garcia's, and Ryan Gallagher's testimony would be of no value or would damage the defense's case. Indeed, Whiteman's testimony at trial bears this conclusion out—she testified that her friends "believed that the man across the hall was beating up his girlfriend."[5] *See* Transcript of Jury Trial Held on July 17, 2012 at p. 76. In any event, the Defendant's conjecture in his PCRA petition that the potential witnesses did not disclose exculpatory information at the time of the police interview because they simply did not like the police or perhaps were involved in some form of illegal activity does not provide a basis for relief under the PCRA.

Finally, the Defendant asserts within his second claim of ineffective assistance that Mr. Cooke failed to investigate and interview certain lay witnesses identified by the Defendant prior to trial. The Defendant contends that Mr. Cooke's failure to investigate and interview these witnesses is "apparent on the face of the record where, when preparing to sequester witnesses at the start of the trial, Attorney Cooke had no idea who Mr. Helmick's witnesses were, as evidenced by his own testimony." PCRA Petition, p. 83. The Defendant points to the following statement made by Mr. Cooke: "Since my subpoenas are for tomorrow afternoon, they are all family. I don't know who these people are." *Id.*; *see also* Transcript of Jury Trial Held on July 17, 2012 at p. 17.

The Defendant's reliance on Mr. Cooke's statement to establish ineffective assistance is misplaced. When considered in context in the full conversation among the attorneys and the trial

---

[5] The Court notes that Mr. Cooke objected to Whiteman's statement as hearsay. The trial court sustained the objection and instructed the jurors not to consider what Whiteman said regarding statements made by her friends. Transcript of Jury Trial Held on July 17, 2012 at p. 76.

court, it establishes only that there was a crowd of people in the courtroom that were likely family members who would not be testifying. Transcript of Jury Trial Held on July 17, 2012 at pp. 17-18. Mr. Cooke's statement does not prove that he did not review or take into account the information provided by the Defendant. Moreover, after an independent review of that information, the Court finds that Mr. Cooke could have concluded prior to interviewing the individuals on the Defendant's list that the proffered testimony would be of no value, would damage the defense, or simply would not be admissible.[6] *See* Appendix of Exhibits to PCRA Petition, Exhibits A, B. In connection with this, the Court finds that the Defendant has not shown prejudice. Stated differently, the Defendant has not shown that there is a reasonable probability that the testimony each respective witness would have provided would have led to a different outcome at trial. Considering that the Defendant did not meet his burden, the Court finds the Defendant's second claim of ineffective assistance of counsel fails.

The Defendant next claims that Mr. Cooke should have filed a suppression motion regarding the statement, "I killed that bitch dead," made by the Defendant at the scene of the incident. *See* PCRA Petition, p. 88. The Defendant made the statement to Whiteman in response to her asking him what he was doing as he walked out of the victim's apartment carrying the sledgehammer. The statement was also heard by Church, the victim's neighbor.

The short answer to the Defendant's claim is that the Defendant's out of court statement was an admission by a party-opponent, which is a settled exception to the hearsay rule. *See* Pa.R.E. 803(25); *see also Commonwealth v. Edwards*, 903 A.2d 1139 (Pa. 2006). Therefore, the Court concludes that the Defendant has not established that he could have prevailed in a motion to suppress the statement. Mr. Cooke did not provide ineffective assistance of counsel by failing

---

[6] The Court notes that none of the witnesses identified by the Defendant were eyewitnesses. The Court also notes that Mr. Cooke issued ten subpoenas of which, seven were still active at the time of trial. *Id.* at p. 202. Appended to the Defendant's PCRA petition as Exhibit B are affidavits of seven intended witnesses.

15

to file a suppression motion because the Defendant's suppression claim would have been meritless. *See Commonwealth v. Luster*, 71 A.3d 1029, 1052 (Pa. Super. Ct. 2013) (holding counsel "cannot be found ineffective for failing to pursue [a] baseless suppression claim").

The Defendant's fourth claim of ineffective assistance of counsel revisits his argument concerning lay witnesses identified by the Defendant, but not called at trial by Mr. Cooke. *See* PCRA Petition, p. 89. Here, the Defendant focuses on witnesses that would have testified that they observed the victim "functioning normally" after her release from the hospital. According to the Defendant, had the jury been presented with testimony that the victim drove herself to the trial and walked normally into court, they would have concluded that the victim had not sustained serious bodily injury.

Section 2301 defines "serious bodily injury" as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301. The paramedic that responded at the time of the incident testified that the victim was flown by medical helicopter to a trauma center rather than being transported by ground to the hospital because her condition began to deteriorate and she was at substantial risk of death. Transcript of Jury Trial Held on July 17, 2012 at p. 98. The victim testified that she remained in hospital for eleven days. She also testified that her injuries consisted of a right side skull fracture, six staples in her head, trauma in the middle ear, calcium deposits in her ear due to broken bones, consistent ringing in her right ear, a cracked rib, and a blood clot in the left side of her head. *Id.* at p. 43. At the time of trial, the victim still experienced dizzy spells, headaches, her jaw cracking, her ear feeling like it is full of cotton, and persistent ringing in her right ear. *Id.* at p. 44.

16

Based on this testimony, the Court finds it improbable that the jury would conclude that the victim had not suffered serious bodily injury merely because she had been observed by lay persons "functioning normally" in the time span between being released from the hospital and attending the trial. Assertions that the victim drove to trial and walked up and downhill on her way into court does not negate that she was at substantial risk of death some six months prior. Further, the proffered testimony of a lay witness observing the victim driving, waking, or dancing does not disprove that the victim now suffers from memory loss after being struck by a sledgehammer in the head. Moreover, the Defendant's own testimony belies his claim. On cross examination, the prosecution asked the Defendant, "Would you agree that if someone were to be hit over the head with a sledgehammer, that would put them at risk of death?" *Id.* at p. 241. The Defendant responded, "Yeah. If it was done on purpose, certainly would. Even by accident, you know." *Id.* The Court concludes that the Defendant has not shown that the absence of the testimony of the lay witnesses was so prejudicial as to have denied him a fair trial. Accordingly, the Defendant's fourth claim of ineffective assistance of counsel fails.

Claims five through ten in the Defendant's PCRA petition involve assertions of ineffective assistance of counsel that relate to trial strategy—not asking certain questions, not making various objections including to the admittance of lab reports, not introducing "complete" surveillance footage, and, again, not calling certain witnesses. *See* PCRA Petition, pp. 91-103. The Defendant's argument throughout appears to employ a hindsight approach and does not satisfy the ineffectiveness analysis required by Pennsylvania law. The Court reiterates that "an evaluation of counsel's performance is highly deferential, and the reasonableness of counsel's decisions cannot be based upon the distorting effects of hindsight." *Commonwealth v. Rolan*, 964 A.2d 398, 406 (Pa. Super. Ct. 2008) (quoting *Commonwealth v. Basemore*, 744 A.2d 717, 735

17

(Pa. 2000)). Although the Defendant points out various instances where he believes Mr. Cooke should have made an objection or should have recalled witnesses, the Defendant does not demonstrate prejudice such that the outcome of the proceeding would have been different. To illustrate this, the Defendant claims that Mr. Cooke was ineffective for failing to object to the admittance of the lab report concerning fingerprint analysis of the sledgehammer. That lab report, however, concludes that the technician did not find any fingerprints on the sledgehammer. Accordingly, the Defendant was not prejudiced by the introduction of the report and an objection to its introduction by Mr. Cooke would serve little purpose. After careful review of the PCRA Petition and record, the Court finds that claims five through ten fail.

The Defendant next alleges that the prosecutor, Darren Newberry, committed misconduct during trial and Mr. Cooke did not object. *See* PCRA Petition, p. 107. The Pennsylvania Supreme Court in *Commonwealth v. Tedford*, 960 A.2d 1 (Pa. 2008), has outlined what a defendant must prove to successfully raise an ineffectiveness claim for failure to object to a prosecutor's comments. The court in *Tedford* stated, "ineffectiveness claims stemming from a failure to object to a prosecutor's conduct may succeed when the petitioner demonstrates that the prosecutor's actions violated a constitutionally or statutorily protected right, such as the Fifth Amendment privilege against compulsory self-incrimination or the Sixth Amendment right to a fair trial, or a constitutional interest such as due process." *Tedford*, 960 A.2d at 29. Additionally, the prosecutorial misconduct must be of sufficient significance to result in the denial of the petitioner's right to a fair trial. A prosecutor's comments will only be reversible error when the comments effect is to unavoidably prejudice the jury, "forming in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a fair verdict." *Id.* at 33. If a prosecutor's comments "are based on the evidence or proper

18

inferences therefrom, or represent mere oratorial flair," they are not objectionable. *Id.*; *see also*

*Commonwealth v. Jones*, 811 A.2d 994, 1006 (Pa. 2002). Counsel could properly determine a

comment did not require an objection if the jury is instructed that a prosecutor's comments are

not evidence. *See Tedford*, 960 A.2d 1.

Here, the Defendant lists six comments made by Mr. Newberry during his closing

argument that the Defendant claims misrepresented the evidence in violation of due process. The

Defendant argues that Mr. Cooke's failure to object permitted false facts to be considered by the

jury. The Defendant, however, does not address that the trial court instructed the jury during the

opening charge that the statements and/or questions of counsel are not evidence. Transcript of

Jury Trial Held on July 17, 2012 at p. 26. The jury also received the following detailed

instruction from the trial court during the final jury instructions:

> Now, regarding the arguments of counsel, both Mr. Newberry and Mr. Cooke
> gave strong and thoughtful, cogent closing arguments, and you may consider
> them during your deliberations. However, the arguments of counsel are not part of
> the evidence and you should not consider them as such. However, in deciding the
> case, you should carefully consider the evidence in light of the various reasons
> and arguments that each lawyer made. It is the right and duty of each lawyer to
> discuss the evidence in a manner that is most favorable to the side he or she
> represents. You should be guided by each lawyer's arguments to the extent they
> are supported by the evidence and insofar as they aid you in applying your own
> reason and common sense. However, you are not required to accept the arguments
> of either lawyer. It is for you and you alone to decide the case based on the
> evidence as it was presented from the witness stand and in accordance with these
> instructions. Anything that counsel may have said in any opening statements or
> closing arguments or any personal opinions that may have been expressed, if they
> misstated any facts or evidence or added any alleged facts not in evidence, you
> should disregard that, because it is your recollections, individually and
> collectively, that count and nothing else.

Transcript of Jury Trial Held on July 18, 2012 at pp. 34-35.

Based on the above instruction that the arguments of Mr. Newberry are not evidence, Mr. Cooke

could properly determine that the comments made during the prosecution's closing argument did

not require an objection. Further, a review of the six comments identified by the Defendant shows that all of the comments are based on the evidence or proper inferences therefrom. Mr. Newberry is not required to discuss the evidence in a light most favorable to the Defendant. Nor is Mr. Newberry required to highlight conflicting testimony. The Defendant has not demonstrated how Mr. Newberry's discussion of the evidence in a manner favorable to the prosecution resulted in the creation of "false facts" that unavoidably prejudiced the jury. Accordingly, the Court finds that Mr. Cooke was not ineffective for not objecting and the Defendant's eleventh claim fails.

The Defendant's twelfth and thirteenth claims are interrelated. The Defendant claims that Mr. Cooke was ineffective for failing to object to a supplemental jury instruction on transferred intent and for failing to object to the Defendant's absence when that instruction was given, respectively. *See* PCRA Petition, pp. 110, 116. By way of further explanation, while the jury was deliberating, the trial court received a question from the jury, "Question: Criminal Attempt-Murder, does intent refer strictly to Lori Phillips or to anyone?" Transcript of Jury Trial Held on July 17, 2012 at p. 316. The attorneys met with Judge Moschetta Bell in chambers to address the question at which time Mr. Newberry requested that the jurors be instructed on transferred intent. A discussion among the attorneys and Judge Moschetta Bell ensued concerning the propriety of such an instruction. *See* Transcript of Excerpt of Jury Trial Held on July 18, 2012. A review of the transcript of this discussion reveals that the jury returned a verdict prior to any response being given to the jury's question. *Id.* at p. 23. As such, the Defendant's claims are moot.

The remaining claims in the Defendant's PCRA petition involve post-sentencing and appellate issues. In his fourteenth claim, the Defendant asserts ineffective assistance of trial counsel for failure to preserve issues for post-sentence motions or appellate review relating to the

discretionary aspects of the Defendant's sentence. *See* PCRA Petition, p. 117. In his fifteenth,

and final, claim, the Defendant asserts ineffective assistance of post-trial counsel for failure to

timely consult with the Defendant post-sentence for purposes of challenging the discretionary

aspects of his sentence, failure to petition the court for funds to employ a forensic expert, failure

to file post-sentence motions concerning weight and/or sufficiency of the evidence, and failure to

preserve issues for appellate review related to the discretionary aspects of the Defendant's

sentence. *Id.* at p. 121.

The Court repeats that in order to be entitled to relief on these ineffectiveness claims, the

Defendant must prove the underlying claim is of arguable merit, counsel's performance lacked a

reasonable basis, and counsel's ineffectiveness caused him prejudice. Counsel will not be

ineffective for failing to preserve a baseless claim. *Commonwealth v. Cotton*, 487 A.2d 830 (Pa.

Super. Ct. 1984). To prevail upon a layered ineffectiveness claim, a defendant "must plead in his

PCRA petition that his prior counsel, whose alleged ineffectiveness is at issue, was ineffective

for failing to raise the claim that counsel who preceded him was ineffective in taking or omitting

some action." *Commonwealth v. Reaves*, 923 A.2d 1119, 1127 (Pa. 2007) (citation omitted).

Additionally, a defendant must present argument on the three prongs of the ineffectiveness test

as to each relevant layer of representation. *Id.*

After careful review of the PCRA Petition and record, the Court finds that the Defendant

has not established that the underlying claims have merit or that he was prejudiced by trial

counsel or post-trial counsel—*i.e.*, that but for trial counsel or post-trial counsel's failure to

preserve issues, there was a reasonable possibility that a new trial or new sentencing would have

been awarded. Although the Superior Court deemed the reasonableness of the Defendant's

sentence to be waived on direct appeal, the trial court addressed this issue on its merits in its

21

1925(a) opinion. The trial court noted that the Defendant was sentenced within the standard range of the guidelines. *See* 1925(a) Opinion, p. 21 (filed January 2, 2013). Further, the trial court explained that in crafting the Defendant's sentence, the court reviewed the pre-sentence investigation and highlighted many factors supporting the sentence. *Id.* at p. 21-22. "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Commonwealth v. Moury*, 992 A.2d 162, 169-70 (Pa. Super. Ct. 2010). In view of this, this Court finds that the Defendant's underlying claim regarding the discretionary aspects of his sentence is without merit. Consequently, counsel cannot be held ineffective for failing to preserve this sentencing issue.

Similarly, counsel cannot be held ineffective for failure to file various post-sentence motions on grounds of sufficiency or weight or for failure to undertake certain actions to develop such motions (*i.e.*, petition the court for funds to obtain a forensic expert). The legal standards regarding sufficiency and weight of the evidence are well settled. "[I]n evaluating a challenge to the sufficiency of the evidence, [the trial court] must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established by beyond a reasonable doubt." *Commonwealth v. Little*, 879 A.2d 293, 296-97 (Pa. Super. Ct. 2005). It is the fact finder's jurisdiction to determine the credibility of witnesses and the weight to be accorded the evidence, and the fact finder is allowed to believe all, part, or none of the evidence. *Commonwealth v. Koehler*, 914 A.2d 427, 436 (Pa. Super. Ct. 2006). Unless the evidence presented at trial is "so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances," the verdict is not to

22

be changed on appeal. *Commonwealth v. Davis*, 799 A.2d 860, 866 (Pa. Super. Ct. 2002) (quoting *Commonwealth v. Seibert*, 622 A.2d 361, 363 (Pa. Super. Ct. 1993)). With respect to weight of the evidence, a trial court may award a new trial on the basis that the verdict was contrary to the weight of the evidence "only where the verdict is so contrary to the evidence as to shock one's sense of justice and make the award of a new trial imperative." *Commonwealth v. Auker*, 681 A.2d 1305, 1316 (Pa. 1996); *see also Commonwealth v. Mason*, 741 A.2d 708, 715 (Pa. 1999).

In the present case, the Defendant has not argued that the evidence presented at trial was so weak and inconclusive that as a matter of law, no probability of fact can be drawn from the combined circumstances. Nor has the Defendant argued that the verdict was so contrary to the evidence as to shock one's sense of justice. Rather, it appears to be the Defendant's position that a forensic expert may have assisted post-trial counsel to show that the evidence could possibly have been interpreted by the jury more favorably after the fact. This position is without merit as previously discussed. *See infra* pp. 8-12.

For the above-mentioned reasons, this Court finds that there are no genuine issues of material fact in the claims raised by the Defendant and said claims do not entitle the Defendant to post-conviction collateral relief.

BY THE COURT,

Gary Gilman, Judge

3/7/17
Date

23

IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA )
)
)
)
v. ) No. CR 552 - 2012
)
)
PAUL HELMICK )
Defendant. )
)

## ORDER

**AND NOW**, this 25th day of APRIL, 2017, after reviewing the Defendant's Response to Pa.R.Crim.P. 907 Notice of Intent to Dismiss, it is hereby ORDERED, ADJUDGED, and DECREED that the Defendant's PCRA is DISMISSED. Pursuant to Rule 910 of the Pennsylvania Rules of Criminal Procedure, the Defendant has the right to file an appeal to the Superior Court within thirty (30) days of this date of this order. The appeal must be filed with the Washington County Clerk of Courts. PURSUANT TO RULE 908(E), THE DEFENDANT SHALL BE SERVED WITH NOTICE OF THIS ORDER BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED.

This Court provided notice to the Defendant by way of an Order and Notice dated March 7, 2017 that it intended to dismiss the Defendant's PCRA petition without a hearing. The Court found no genuine issues of material fact based upon the reasons set forth in the Order and Notice. The Defendant filed a timely response to the Court's notice of intent to dismiss. The Court finds that its March 7th Order and Notice addresses the issues raised in both the Defendant's PCRA

petition and response. Consequently, the Court need not reiterate its reasoning in detail and will address the Defendant's response in abridged fashion below solely with respect to Claim 7.

In Claim 7, the Defendant contends that he was "denied his right to the effective assistance of counsel, right to be tried by twelve interested jurors, and due process of law . . . where trial counsel failed to object and seek the removal of Juror #2 for cause where the Juror was not actively engaged in the proceedings throughout the trial and the Court refused to remove the Juror on the motion made by the Commonwealth." *See* Petition for Post-Conviction Collateral Relief from criminal Conviction Pursuant to the Post-Conviction Relief Act, p. 99. During trial, the Commonwealth made a motion in chambers to strike Juror number 2 based on observations that the Juror was looking at the ground throughout the trial, did not make eye contact with the attorneys or witnesses, and generally appeared hostile. Transcript of Jury Trial Held on July 17, 2012 at pp. 143-49. The Defendant's counsel, Mr. Cooke, objected to the motion based on his observations that the Juror had made eye contact and appeared to be looking and watching during the trial. Mr. Cooke noted that while the Juror "seems somewhat on the hostile side... [d]efensively, it's a tactic that can work for me." *Id.* at p. 145.

Rule 645 governs the seating and retention of alternate jurors. Pursuant to that rule, "[a]lternate jurors, in the order in which they are called, shall replace principal jurors who become unable or disqualified to perform their duties." Pa.R.Crim.P 645(A). "The discharge of a juror is within the sound discretion of the trial court. Absent a palpable abuse of that discretion, the court's determination will not be reversed." *Commonwealth v. Jacobs*, 639 A.2d 786, 790 (Pa. 1994). The Pennsylvania Supreme Court has explained that "the exercise of this judgment must be based upon a sufficient record of competent evidence to sustain removal." *Commonwealth v. Saxton*, 353 A.2d 434, 442 (Pa. 1976). Here, the trial court found that there

2

vas not a sufficient record of competent evidence to sustain removal of Juror number 2. The trial court noted that the Juror was acceptable to both attorneys through *voir dire* and that "[t]here has been no evidence presented or observed that she was sleeping, dozing or not paying attention to testimony." Transcript of Jury Trial Held on July 17, 2012 at p. 201. Having reviewed the record, this PCRA Court finds no competent evidence in the record to support the conclusion that Juror number 2 was unable to perform as a juror. This Court reiterates that absent a palpable abuse of its discretion, a trial court's determination regarding the discharge of a juror will not be reversed. The Defendant has failed to prove that the claim underlying his ineffectiveness claim has arguable merit and that trial counsel's actions lacked any reasonable basis. Accordingly, Claim 7 is denied.

BY THE COURT,

Gary Gilman, Judge

3