J-S36037-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DAVID LAFANTANO | : | |
| | : | |
| Appellant | : | No. 1908 EDA 2017 |

Appeal from the PCRA Order June 5, 2017
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s):  CP-39-CR-0002295-2012,
CP-39-CR-0002298-2012

BEFORE:  GANTMAN, P.J., DUBOW, J., and KUNSELMAN, J.

MEMORANDUM BY GANTMAN, P.J.:                **FILED AUGUST 23, 2018**

Appellant, David Lafantano, appeals *pro se* from the order entered in the Lehigh County Court of Common Pleas, which denied his first petition brought pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

In its opinion, the PCRA court fully and correctly set forth the relevant facts and procedural history of this case.  Therefore, we have no need to restate them.

Appellant raises the following issues for our review:

> DID THE PCRA COURT ERR IN LAW WHEN [APPELLANT] WAS ENTITLED UNDER PENNSYLVANIA'S WIRETAPPING AND ELECTRONIC SURVEILLANCE CONTROL ACT TO THE SUPPRESSION OF RECORDINGS OF CONVERSATIONS, BEFORE TRIAL, THAT OCCURRED BETWEEN CO-DEFENDANT AND HIS VISITOR IN A COUNTY

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

CORRECTIONAL FACILITY'S VISITING ROOM, WHERE INMATES CONVERSE WITH VISITORS THROUGH A GLASS PARTITION, USING A TELEPHONE-LIKE HAND-SET APPARATUS?

DID THE PCRA COURT ERR IN LAW WHEN IT HELD THAT TRIAL COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO REQUEST THE SUPPRESSION OF THE VISITING ROOM RECORDINGS, IN LIGHT OF THE PENNSYVLANIA SUPREME COURT'S RECENT RULING IN **COMMONWEALTH V. FANT**, [637 PA. 135,] 146 A.3D 1254 (2016)?

DID THE PCRA COURT ERR IN LAW WHEN IT RULED THAT APPELLATE AND PCRA COUNSELS WERE NOT INEFFECTIVE FOR FAILING TO REQUEST AND/OR PROPERLY RAISE ON APPEAL TRIAL COUNSEL'S FAILURE TO MOVE FOR SUPPRESSION OF THE RECORDINGS, WHICH WERE NOT AN EXCEPTION TO THE PENNSYLVANIA WIRETAPPING AND ELECTRONIC SURVEILLANCE CONTROL ACT?

WAS PCRA COUNSEL INEFFECTIVE IN FAILING TO RAISE AND PRESERVE FOR APPEAL THE TRIAL COURT'S ERROR IN LAW, WHEN THE COURT DENIED [APPELLANT] HIS RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW, WHEN THE COMMONWEALTH WAS ALLOWED TO INTRODUCE THE VISITING ROOM RECORDINGS TO ESTABLISH THAT [APPELLANT] WAS A CO-CONSPIRATOR, WHEN SAID RECORDINGS WERE NOT AN EXCEPTION TO PA.C.S.A. § 5704(14)?

(Appellant's Brief at 4).

Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error. **Commonwealth v. Conway**, 14 A.3d 101, 109 (Pa.Super. 2011), *appeal denied*, 612 Pa. 687, 29 A.3d 795 (2011). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. **Commonwealth v. Boyd**,

923 A.2d 513, 515 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). We give no such deference, however, to the court's legal conclusions. *Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa.Super. 2012). Further, a petitioner is not entitled to a PCRA hearing as a matter of right; the PCRA court can decline to hold a hearing if there is no genuine issue concerning any material fact, the petitioner is not entitled to PCRA relief, and no purpose would be served by any further proceedings. *Commonwealth v. Wah*, 42 A.3d 335, 338 (Pa.Super. 2012); Pa.R.Crim.P. 907.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinions of the Honorable Douglas G. Reichley, we conclude Appellant's issues merit no relief. The PCRA court's opinion comprehensively discusses and properly disposes of the questions presented. (*See* PCRA Court Opinion, filed July 7, 2017, at 11-15) (finding **(1-2)** at trial, counsel objected to introduction of wiretap recordings as hearsay and court overruled counsel's objections; Commonwealth presented testimony of Detective Edward Ressler, custodian of records for Lehigh County prison; Detective Ressler testified that when one uses internal prison telephone system to communicate with inmate or visitor, user hears warning that conversation is being recorded; in light of warning, Appellant could not assert any reasonable expectation of privacy in prison visit conversation and his reliance on **Fant, supra** is misplaced; consequently, trial counsel could not be deemed ineffective for failing to object based on Wiretap Act; **(3-4)**

- 3 -

appellate counsel was not ineffective for failing to raise trial counsel's alleged ineffectiveness on direct appeal, where allegations of counsel's ineffectiveness are properly raised in PCRA petition, not on direct appeal; further, Appellant's court-appointed PCRA counsel properly reviewed Appellant's claims, filed *Turner/Finley*[2] letter, and PCRA court granted leave to withdraw).  The record supports the PCRA court's reasoning.  Accordingly, we affirm on the basis of the PCRA court opinion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/23/18

---

[2] ***Commonwealth v. Turner***, 518 Pa. 491, 544 A.2d 927 (1988) and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa.Super. 1988) (*en banc*).

## IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA
### CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA     |

               vs.                 |    Nos.   2295, 2298 / 2012

DAVID LAFANTANO,            |            1908 EDA 2017
           Defendant      |

### ORDER

AND NOW, this 31st day of July, 2017,

**IT APPEARING** the accompanying Memorandum Opinion satisfies the requirements of

Pa.R.A.P. 1925(a),

**IT IS ORDERED** that the Clerk of Courts Criminal Division transmit the record in the

above-captioned matter to the Superior Court forthwith.

By the Court:

Douglas G. Reichley, J.

FILED

2017 JUL 31 AM 11: 30

CLERK OF JUDICIAL RECORDS
LEHIGH COUNTY, PA

7/31/17     𝒞𝒜𝒟

COLL PROB LCP CA JUDG OTHER

PERSONAL DELIVERY:
COLL PROB LCP CA JUDGE OTHER

REGULAR MAIL:
ATTY
OTHER
     230pm
     230pm 8/1/17

SCI Dollas
ky 9/7/7

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | |
| vs. | Nos. 2295, 2298 / 2012 |
| | 1908 EDA 2017 |
| DAVID LAFANTANO, | |
| Appellant | |

July 19, 2017

Douglas G. Reichley, J.

## 1925(a) OPINION

David Lafantano, Appellant, is appealing from the Court's Order entered June 5, 2017

denying and dismissing his Post Conviction Relief Act (PCRA) Petition. For the reasons set forth

herein, the Court's Order denying relief under the PCRA was proper and the June 5, 2017 Order

should be affirmed.

### Factual History

The factual background of the case was set forth in the Court's original opinion on

Appellant's direct appeal as follows:

> Appellant and his co-defendant, Javier Ramos, were involved in three burglaries
> which took place over the course of approximately one month in early-2012 in
> suburban areas of Lehigh and Northampton Counties. The first incident occurred
> on February 16, 2012. Candy Barr Heimbach was returning home to her residence
> at 7066 Dusseldorf Square, Bethlehem, Pennsylvania, from a business trip at
> approximately 6:00 in the evening. When she arrived at her home, she discovered
> the back door to her house was wide open. She found things displaced throughout
> her house. It was still completely warm inside her house despite the open door
> and temperatures outside being in the twenties.
>
> Ms. Heimbach returned to her car and went to a neighbor for help. Her neighbor's
> wife called the State Police. After the police arrived and secured the house, Ms.
> Heimbach was allowed inside. She observed that the perpetrators gained entry
> through a window.

1

Police walked Ms. Heimbach through her house. She testified things were missing and indicated the house had been trashed. Jewelry and a laptop computer were taken from the guest room, as well as several laptops from the family room, a camera, an iPod, an iPhone, an electric guitar, a Wii, and an Xbox 360 belonging to Ms. Heimbach's son. The user name on the Xbox Live account associated with the Xbox 360 console was "SemperAequus." In the master bedroom, Ms. Heimbach's husband's pillow case had been taken along with numerous jewelry items. Ms. Heimbach testified that in April of 2011, she and her husband had used a company called Class Act Landscaping for landscaping purposes.

Trooper Jason R. Trautman, who works in the Pennsylvania State Police Forensic Services Unit, testified that he went to Ms. Heimbach's residence to aid in the investigation. Trooper Trautman collected certain items from the scene for processing.

On February 28, 2012, Veronica Ciraulo of 3503 Courtney Drive, Upper Saucon Township, Lehigh County, returned home from work in the evening to find the door to her basement was open and the light was on downstairs. A sliding glass door near her kitchen was completely open. A 32" Samsung television was missing from the family room, and Ms. Ciraulo found that several drawers and other pieces of furniture had been opened or otherwise disturbed. A back window leading into a bar area in the Ciraulos' basement was broken.

Ms. Ciraulo called the police, who arrived and did a walk-through of the house with her. In addition to the television, Ms. Ciraulo testified that her husband's iPad had been taken, along with jewelry, a Timex watch, and some cash. In her bedroom, Ms. Ciraulo found that her husband's pillow case was removed and the pillow was thrown on the floor. Ms. Ciraulo testified that in the Fall of 2011, she and her husband used Class Act Landscaping for some work on their property. Ms. Ciraulo further testified that neither defendant had permission to be on her property on the date of the burglary.

Detective Joseph Pochran arrived on the scene of the Ciraulo burglary in order to conduct an investigation. Detective Pochran learned that a neighbor had surveillance cameras outside his home. The video depicts a black SUV driving around the neighborhood and backing into Ms. Ciraulo's driveway. A mail truck can be seen driving by the Ciraulo residence.

On March 12, 2012, Dana Wooley of 1440 Saratoga Circle in Breiningsville, Pennsylvania, was at home alone at approximately 8:45 in the morning. She took a shower and finished just after 9:00. She went into another room of her house overlooking her driveway, which comes up from the street to a side-entrance garage. Ms. Wooley looked out the window and saw a dark SUV with shiny rims backed into her driveway. She observed a person emerging from the front passenger side of the SUV and stepping around toward the back. The license plate was covered on the vehicle by something resembling a light cloth, either pink or peach in color. The person who got out of the vehicle was wearing a grayish-

black hooded sweatshirt with a red baseball cap and red sneakers. Ms. Wooley was approximately twenty feet up while she observed this and testified she had a clear view of that person's face.

The person standing outside the SUV tightened the hood on his sweatshirt around the baseball cap and walked toward the rear of the house. Upon observing this, Ms. Wooley called 911. While on the phone with 911, Ms. Wooley heard rustling and the sound of a person possibly trying to open doors from outside. Ms. Wooley proceeded to a window looking out the front of her house and saw a second "scruffy looking" individual without much hair on his head wearing a gray colored shirt and jeans. Ms. Wooley further testified that while the men were at her house, she heard something break, which she later realized was a glass window.

While Ms. Wooley was on the phone with dispatch, she watched the black SUV leave her driveway, this time with the license plate uncovered and the cloth removed. She advised the dispatcher that it was a Pennsylvania plate. She watched the SUV drive up the road toward Ziegels Church Road. Ms. Wooley testified she could see a police car's lights as it approached the intersection and she told the dispatcher that the officer was going to run right into the SUV.

The police car Ms. Wooley saw was being driven by Pennsylvania State Trooper Patrick Dawe, who was responding to the call at Ms. Wooley's house. Trooper Dawe testified that as he drove past Saratoga Circle on Ziegels Church Road, he observed a black SUV with shiny rims in a driveway on Saratoga Circle. Trooper Dawe testified that he saw the black Ford Experdition SUV back out onto Saratoga Circle and make a left onto Ziegel's Church Road. Because it was driving the opposite direction from him, Trooper Dawe turned his vehicle around and activated his lights and sirens to initiate a traffic stop of the vehicle. The vehicle pulled over into the nearby Ziegel's Church parking lot. The license plate number for the black SUV was HPJ 8699.

Trooper Dawe exited his vehicle and approached the SUV. Appellant was the driver, and his co-defendant, Javier Ramos, was in the front passenger seat. After backup arrived for Trooper Dawe, the officers asked Appellant and Ramos to step out of their vehicle. Trooper Dawe spoke separately to Appellant, who indicated he was Ramos' brother-in-law and they were attempting to solicit work on their own from Class Act Landscaping contacts. He indicated they had stopped at a house on Saratoga Circle. Appellant told Dawe that Ramos remained in the vehicle while he got out, approached the front door, rang the doorbell and knocked, and the two men left when there was no answer.

Trooper Dawe then spoke to Ramos. Ramos denied being related to Appellant. He told Dawe that they were trying to solicit work from their old landscaping company's clients. Ramos' account of the events at Ms. Wooley's house were the same as Appellant's, that Appellant approached the door, knocked and rang the doorbell, and came back to the SUV after no one answered.

3

While the vehicle stop was occurring, Trooper Jonathan Gerkin of the Pennsylvania State Police Criminal Investigation Unit arrived and spoke to Ms. Wooley briefly at her home. He observed the physical damage to her residence, including damage to the rear of the house. Gerkin and Ms. Wooley went outside and saw a fence was left open leading to the back yard and observed the broken window to the family room with the screen lying on her deck. The screen had been in the window the previous evening, not on the deck.

Upon being advised that the black SUV had been stopped by Trooper Dawe, Gerkin took Ms. Wooley to that location for a "show-up." Prior to taking her there, Gerkin advised Ms. Wooley that he was taking her to an area where a traffic stop was conducted. Gerkin further noted the individuals present may or may not be involved, and that it was just as important to rule out innocent people as it was to identify the perpetrators.

Trooper Gerkin slowly drove Ms. Wooley past the Defendants while the vehicle remained in the street and the suspects stood in the church parking lot approximately twenty to thirty feet away. The weather conditions were clear with a bright and sunny sky. The defendants were not handcuffed and stood within a few feet of each other while continuing to face one direction as Trooper Gerkin and Ms. Wooley drove by. As they drove past, Ms. Wooley positively identified Appellant and Ramos as the two individuals she saw at her house. Trooper Gerkin relayed that information to Trooper Dawe and Appellant and his co-defendant were arrested.

Trooper Thomas M. Durilla of the Pennsylvania State Police was contacted to assist in searching the Ford Expedition and obtaining items as evidence from the vehicle. Within the vehicle, Trooper Durilla and another officer, Trooper Robert Devers, located green New York Jets gloves in the doors of the vehicle, a pair of red and tan gloves, two screwdrivers, and an oil-soaked pink rag. State police obtained a warrant to search and secure the items in the vehicle.

Trooper Gerkin subsequently communicated with Trooper Seiple and Detective Pochran, the lead investigators of the Heimbach and Ciraulo burglaries, respectively. Two and a half years prior, Ms. Wooley had used Class Act Landscaping, similar to the victims of the Heimbach and Ciraulo burglaries. Thomas Duffy, the owner of Class Act Landscaping, testified that Appellant and his co-defendant worked for Class Act up through the Fall of 2011. Ramos had worked off and on for approximately two or three years, and Appellant worked for approximately four years.

After Appellant and Ramos were arrested, Ramos had frequent contact in the form of prison visits and telephone calls with his girlfriend, Allison Wanamaker. Prisoners are notified their telephone communications are recorded. While Ramos was in prison, his recorded conversations with Ms. Wanamaker included references to an Xbox and a TV, along with an indication that the Xbox was in Ms. Wanamaker's home courtesy of "the electronics fairy." Based on information

4

obtained from these communications, Trooper Gerkin proceeded to the Wanamaker residence.

On April 13, 2012, Trooper Gerkin made contact with Fay Wanamaker of 311 East 21st Street, Northampton, Pennylvania. Fay is Allison Wanamaker's mother; the two women live together in Fay Wanamaker's home. Fay Wanamaker testified that on April 13, 2012, police arrived and advised her they were looking for stolen items that they had reason to believe were in her home. Mrs. Wanamaker gave consent for the officers to search her home.

Trooper Gerkin and Trooper Durilla searched Mrs. Wanamaker's residence. In the attic, the officers located a 32" Samsung television and a clear bin with a red lid. Inside the bin was an Xbox 360 and several shoe boxes with the name "Javier" on them. Mrs. Wanamaker testified that she did not recognize these items, had not placed them in her home, and had not given anyone permission to store them in her home, though people frequently kept things in her home. Mrs. Wanamaker did not recognize Appellant or his co-defendant. The television was identified as the one stolen from the Ciraulo residence.

Trooper Gerkin took the Xbox 360 he seized from the Wanamaker residence for analysis. The Xbox Live screen name associated with that Xbox 360 was "SemperAequus," the same name associated with Ms. Heimbach's son's stolen Xbox 360 from the Heimbach burglary.

A search warrant was obtained and executed on April 13, 2012 in order to obtain and search two cell phones police located in the Ford Expedition SUV, which was still in impound. The phones were sent to Detective Pochran, who is also in charge of the Lehigh County Computer Crimes Task Force. Using technology called a Cellebrite UFED, which is capable of extracting data from, *inter alia*, cell phones, Detective Pochran was able to obtain information including text messages from phones subject to forensic analysis. A text message sent on February 28, 2012, the same date as the Ciraulo burglary, at 9:29:24 indicated "mailman just went by."

Gerald Tate, a cellular radio frequency engineer for AT&T, testified as an expert at trial in this matter. While no cellular activity was recorded for February 16, 2012, the date of the Heimbach burglary, cell phone activity placed Appellant and his co-defendant's telephones in the area of the Ciraulo residence on February 28, 2012 at 9:26 a.m., approximately one mile away from a nearby cell tower. An audio recording from a prison visit between Ramos and Allison Wanamaker included reference by Ramos that the phones in the SUV belonged to him and Appellant.

(Opinion, July 29, 2014, at 1-10 (footnotes omitted).)

## Procedural History

Two Criminal Informations were filed against each defendant. In Case Nos. 2296 (Ramos) and 2298 (Appellant), the defendants were charged with Burglary, Criminal Trespass, Theft by Unlawful Taking, Receiving Stolen Property, Criminal Mischief, and Conspiracy related to the Heimbach and Ciraulo burglaries. The other Informations, Case Nos. 2292 (Ramos) and 2295 (Appellant) charged the defendants with offenses stemming solely from the incident at Ms. Wooley's home on March 12, 2012.

Appellant and his co-defendant were arraigned on July 5, 2012. A pretrial hearing was scheduled in the Ramos matter for August 14, 2012. Ramos appeared with counsel, Attorney David D. Ritter, at that time. However, Appellant appeared without counsel for his arraignment. The Lehigh County Office of the Public Defender was appointed on July 12, 2012 to represent Appellant. However for an unknown reason, no specific attorney was appointed for Appellant by the time of the August 14, 2012 hearing.

On August 15, 2012, both defendants' cases were before the Court for a status conference. At that time, the Court appointed Sarah K. Heimbach, Esquire, of the Public Defender's Office to represent Appellant. Attorney Ritter had already filed his Omnibus Pretrial Motion on August 6, 2012 for the Ramos cases. Given the late appointment, Attorney Heimbach was given the option to join with that Motion and/or file her own pretrial motion. Defendant Ramos' Omnibus Pretrial Motion only asserted a Motion to Suppress Identification Evidence.

On August 28, 2012, Attorney Heimbach filed an Omnibus Pre-Trial Motion for Appellant which contained a similar suppression motion and a Motion to Sever. In a footnote, Attorney Heimbach made reference to the fact that as of that date, the Commonwealth never

provided written notice of an intent to join the two Lafantano Informations together for trial prior to the Arraignment. (Omnibus Pre-Trial Motions [Lafantano], at [4] n.5.)

On September 5, 2012, this Court conducted a pretrial hearing on all of the motions. Ramos, through Attorney Ritter, orally joined in Appellant's severance motion contained in his Omnibus Pre-Trial Motion. The severance motion was technically premature at this time as it applied to any joinder of the cases for trial. Nonetheless, the Court heard testimony and legal argument on the identification and joinder issues. When the Commonwealth was confronted with the fact that the joinder of these cases for trial had never been formally accomplished, the Commonwealth orally moved for joinder at that time or alternatively, for leave to file an appropriate written motion. An oral joinder motion is not allowed under the Pennsylvania Rules of Criminal Procedure. *See* Pa.R.Crim.P. 582(B)(1).

At the close of that hearing, this Court entered an Order finding that it appeared the Commonwealth was not aware of the clerical error which caused that office to overlook filing a motion to join the instant cases for trial, and gave the Commonwealth until the following day, September 6, 2012, to file an appropriate written motion. All three attorneys were given until September 13, 2012 to file any additional memoranda of law on their respective positions, including any objections to the Commonwealth's untimely written joinder motion.

On September 6, 2012, the Commonwealth filed a Motion to Join for Trial Defendants, Informations and Offenses Pursuant to Pa.R.Crim.P. 582. Defense counsel each filed briefs in opposition to the Commonwealth's Motion and in support of their own positions on September 13, 2012.

On September 19, 2012, the suppression motion was denied and the motion for joinder was granted over defense objection by Order with an accompanying Memorandum Opinion.

7

A jury trial commenced on December 10, 2012. Following a three-day trial, the jury returned a verdict of Guilty on the Receiving Stolen Property charge from the Heimbach burglary and a verdict of Not Guilty on all other charges related to that burglary incident. The jury convicted Appellant on all charges related to the Ciraulo burglary incident. Finally, the jury convicted Appellant on charges of Attempted Burglary, Criminal Trespass, Criminal Mischief, and Criminal Conspiracy to Commit Burglary relevant to the Wooley incident, but returned a verdict of Not Guilty on the charge of Burglary stemming from that matter. Following trial, a presentence investigation report was ordered and a sentencing hearing date was scheduled.

On January 31, 2013, Appellant received an aggregate sentence of eighteen (18) to forty-two (42) years in a state correctional institution.

On February 7, 2013, Appellant filed post-trial motions which included a Motion for Reconsideration of Sentence and a Motion for New Trial on the basis that the verdict was against the weight of the evidence relevant to the Ciraulo burglary except for the Receiving Stolen Property conviction related to that incident.

The Motion for Reconsideration was denied on February 11, 2013. An argument was conducted on March 19, 2013 to address the weight of the evidence issue. On March 22, 2013, the Motion for New Trial was denied as well.

Appellant did not file a Notice of Appeal, so his judgment of sentence became final on April 22, 2013. During trial, sentencing, and post-sentence motions, Appellant was represented by Sarah K. Heimbach, Esq. of the Lehigh County Public Defender's Office. In February of 2013, Attorney Heimbach left the Public Defender's Office and began working for the Lehigh County District Attorney's Office.

8

On November 13, 2013, Appellant filed a *pro se* Motion for Post Conviction Collateral relief. The Court appointed Kimberly F. Makoul, Esq. to represent Appellant. On January 13, 2014, Attorney Makoul filed an Amended Petition for Post Conviction Relief on Appellant's behalf. However, shortly thereafter, Attorney Makoul was selected as the Chief Public Defender, thereby creating a conflict of interest. Accordingly, the Court appointed Attorney Sean Poll to represent Appellant in his PCRA proceedings and afforded Attorney Poll appropriate time for Attorney Poll to review and familiarize himself with the matter.

On May 1, 2014, by an agreement between the Commonwealth and Appellant, the Court entered an order granting Appellant's PCRA petition and reinstating his appellate rights *nunc pro tunc*. Appellant had timely requested a direct appeal in 2013, but because of Attorney Heimbach's move to the district attorney's office, the request did not reach the necessary parties and did not get acted upon.

On May 28, 2014, Appellant filed a Notice of Appeal. The Court entered an order directing a 1925(b) Statement to be filed within twenty-one days. The 1925(b) Statement was filed on June 30, 2014. On July 29, 2014, the Court filed a 1925(a) Opinion. The Superior Court affirmed Appellant's judgment of sentence on July 31, 2015.

On June 10, 2016, Appellant filed a Petition for Writ of Mandamus which the Court initially treated as a PCRA Petition. The Court appointed Robert Long, Esq. as PCRA counsel for Appellant. However, Attorney Long informed the Court that Appellant was not seeking to file a PCRA petition, and instead merely wanted copies of his transcripts. On September 9, 2016, the Court entered an order granting the transcript request which concurrently relieved Attorney Long of any requirement to file a PCRA Petition on Appellant's behalf.

9

On January 20, 2017, Appellant filed a *pro se* PCRA Petition. Because it was his first PCRA petition after his direct appeal, the Court appointed Alfred Stirba, IV, Esq. to represent Appellant and directed Attorney Stirba to file either an Amended PCRA or an appropriate *Turner/Finley* Letter. On February 24, 2017, Attorney Stirba filed a Motion to Withdraw as Counsel and attached a copy of his *Turner/Finley* Letter.

On April 4, 2017, the Court conducted a hearing on the Motion to Withdraw as Counsel. After the hearing, the Court granted Attorney Stirba's motion and afforded Appellant thirty additional days to file an Amended PCRA Petition.

Appellant filed an Amended PCRA Petition on May 8, 2017. The Court entered a Notice of Intent to Dismiss pursuant to Pa.R.Crim.P. 907, and afforded Appellant time to respond. On May 31, 2017, Appellant filed a *pro se* response. After consideration of the Amended PCRA Petition and Appellant's response to the Notice of Intent to Dismiss, the Court entered an Order on June 5, 2017 denying and dismissing the Amended PCRA.

On June 23, 2017, Appellant filed a Notice of Appeal from the denial of his PCRA Petition. The Court directed Appellant to file a Concise Statement of Matters Complained of on Appeal, which Appellant filed on July 17, 2017.

This Opinion follows.

10

## Discussion

In his 1925(b) Statement, Appellant raises four issues, which are set forth as follows:

1. Did the PCRA Court err in law when [Appellant] was entitled, under the Pennsylvania's (sic) Wiretapping and Electronic Surveillance Control Act to the Suppression of Recordings of Conversations, before trial, that occurred between Co-Defendant and his visitor in a County Correctional Facility's Visiting Room, where Inmates conversed with visitors through a glass partition, using a telephone-like hand-set apparatus?

2. Did the PCRA Court err in law when it held that trial counsel was not ineffective for failing to request the suppression of the visiting room recordings, in light of the Pennsylvania Supreme Court's recent ruling in *Commonwealth v. Fant*, 2016 Pa. LEXIS 2187?

3. Did the PCRA Court err in law when it ruled that Appellate and PCRA Counsel's (sic) were not ineffective for failing to request and/or properly raise on appeal trial counsel's failure to move for suppression of the recordings, which were not an exception to the Pennsylvania Wiretapping and Electronic Surveillance Control Act?

4. Was PCRA Counsel ineffective in failing to raise and preserve for appeal the Trial Court's error in law, when it denied Petitioner his right to a fair trial and Due [Process] of law, when the Trial Court allowed the Commonwealth to introduce the visiting room recordings to establish that Petitioner was a co-conspirator, when said recordings were not an exception to Pa.C.S.A. § 5704(14)?

(1925(b) Statement.)

In order to establish eligibility for PCRA relief, a petitioner must prove by a preponderance of the evidence that the conviction or sentence resulted from, *inter alia*, "ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii).

To prevail on a PCRA claim alleging ineffective assistance of counsel, a defendant must demonstrate all of the following: (1) his underlying claim is of arguable merit; (2) counsel's act or omission was not reasonably designed to advance the defendant's interests; and (3) but for trial counsel's ineffectiveness, a reasonable probability exists that the outcome of the

11

proceedings would have been different. *Commonwealth v. Pierce*, 527 A.2d 973 (Pa. 1987); *see also Strickland v. Washington*, 466 U.S. 668, 694 (1984). A defendant's failure to meet any prong of this test defeats his claim. *Commonwealth v. Wright*, 961 A.2d 119, 149 (Pa. 2008) (citation omitted); *see also Commonwealth v. Wilson*, 672 A.2d 293, 298 (Pa. 1996) ("[W]here it is clear that Defendant has failed to meet the prejudice prong [of an ineffective assistance of counsel claim], the claim may be disposed on that basis alone, without a determination of whether the first two prongs have been met."). Counsel is presumed to be effective and the defendant must prove otherwise. *Commonwealth v. Rivers*, 786 A.2d 923, 927 (Pa. 2000). Finally, it is within the province of the PCRA court to determine witness credibility, and those determinations are binding on the appellate courts so long as they are supported by the record. *Commonwealth v. Johnson*, 51 A.3d 237, 242-43 (Pa. Super. 2012) (citation omitted).

On December 5, 2012, Appellant filed a Motion in Limine seeking to exclude hearsay within the prison phone calls between Ramos and a woman named Allison Wanamaker and between Appellant and his wife. Appellant argued the statements from Ms. Wanamaker and Mrs. Lafantano amounted to hearsay because they were being offered for the truth of the matter asserted and were statements made by uncharged co-conspirators. The motion was denied on December 10, 2012 prior to the beginning of jury selection. The Superior Court affirmed this Court's decision. *See Commonwealth v. Lafantano*, 1608 EDA 2014, at 17-24 (Pa. Super. July 31, 2015).

In Appellant's Amended PCRA Petition, Appellant asserts his trial counsel was ineffective for failing to object to the introduction of the prison recordings on the grounds that the recordings violate the Pennsylvania Wiretap Act. Trial counsel objected to the recordings on the basis of hearsay, which the Court overruled and the Superior Court affirmed. Defendant now

argues counsel was ineffective for failing to object to the recordings on the basis that the recordings violating the Wiretap Act, 18 Pa.C.S.A. § 5704(14).

In response to the Court's Notice of Intent to Dismiss pursuant to Pa.R.Crim.P. 907, Appellant referred the Court to the Pennsylvania Supreme Court's decision in *Commonwealth v. Fant*, 146 A.3d 1254 (Pa. 2016), which he again raises on appeal. In *Fant*, the court held that visit conversations between an inmate and a visitor that were recorded did not fall under the correctional facility telephone call exception to the Pennsylvania Wiretap Act. The court reasoned that because the communications, which take place between an inmate and a visitor using devices physically resembling telephones, do not go through a telephone company, the communications do not fall within the scope of the prison recording exception to the Wiretap Act applicable to "telephone calls from or to an inmate." *Id.* at 1265; 18 Pa.C.S.A. § 5704(14).

The Wiretap Act requires that in order for oral communications to be protected, the speaker must have an expectation that the contents of the communication will not be electronically recorded. *Commonwealth v. Brion*, 652 A.2d 287, 288 (Pa. 1994). This involves a twofold requirement. First, a defendant must have exhibited an expectation of privacy, and second, the expectation of privacy must be one that society is prepared to recognize as reasonable. *Commonwealth v. Prisk*, 13 A.3d 526, 531 (Pa. Super. 2011).

Appellant's assertion that the prison visit recordings should have been challenged as a violation of the Wiretap Act is belied by the evidence that was admitted at trial. The Commonwealth presented the testimony of Detective Edward Ressler, who testified he is employed by the Lehigh County District Attorney's Office and is the custodian of records for the Lehigh County Prison. (N.T. December 12, 2012, at 27-28.) Detective Ressler testified that when anyone uses the internal prison telephone system to communicate with an inmate or a visitor, a

13

warning is provided advising that the conversation is being recorded. (*Id.* at 47.) Because there is a warning provided prior to any conversation, Appellant could not assert there was a reasonable expectation of privacy when the parties are directly advised that the conversation would be recorded. Consequently, trial counsel could not be deemed ineffective for failing to raise a violation of the Wiretap Act as the basis for an objection because such an objection would be meritless. *See Commonwealth v. Smith*, 416 A.2d 986, 990 (Pa. 1980) ("[T]rial counsel cannot be deemed ineffective for failing to assert meritless claims . . . .").

Because the admission of the recordings of prison visits was not a violation of the Wiretap Act, Appellant was not denied any constitutional rights. Additionally, Appellant's appellate counsel was not ineffective for failing to raise trial counsel's alleged ineffectiveness on direct appeal. Such allegations of ineffectiveness are properly raised as a PCRA petition, not on direct appeal. *See Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002). Furthermore, Appellant's court-appointed PCRA counsel for the within PCRA matter properly reviewed Defendant's claims, provided an appropriate *Turner/Finley* Letter, and was granted leave to withdraw on that basis.

Accordingly, Appellant did not establish entitlement to any relief under the PCRA. The Court properly denied his *pro se* Amended PCRA Petition.

## Conclusion

Appellant's issues on appeal are not meritorious. The admission of prison recordings did not violate the Pennsylvania Wiretap Act because there was not an expectation of privacy due to the warning before using the phone system that conversations were being recorded. As a result, the Court's denial of Appellant's PCRA Petition was proper and should be affirmed.

By the Court:

Douglas G. Reichley, J.